Exhibit 1

# GMAC RFC - Investment Capital Group

*Homecomings Financial Network*

### Document Lead Sheet

||||||||||||||||||||||||||

Asset_Seq_ID:      70536

||||||||||||||||||||||

Servicer_ID:      GMACM

||||||||||||||||||||||||||||

RFC_Seq_ID:      9153503

|||||||||||||||||||||||||||||

Seller_Ref_ID:      4772646

Servicer_Seq_ID:

Previous_Servicer_Seq_ID:

||||||||||||||||||||||||

Doc_Seq_ID:      536173

||||||||||||||||||||||||||||||||||||

DocType:      MORTGAGE DEED      From:      To:

||||||||||||||||||||||||||||

Doc_Receipt_Date: 07/12/2004

||||||||||||||||||||||||||||||||||||||

| Media: | ORIGINAL RECORDED | | |
|---|---|---|---|
| Borrower last | BUTTERLINE | | **George Lazo** |
| Resolution Type | | Finance Partner | Collateral File Location |
| Resolution Date | | Finance Date Start | SAN DIEGO VAULT |
| Pool | | Finance Date End | ARE003 |

Lead Sheet Generated      Monday, July 12, 2004

Parcel Number: 31-4-16640 0

[Space Above This Line For Recording Data]

**PLEASE RETURN TO:**
**CONTIWEST**
**C/O CONTIMORTGAGE**
**3811 WEST CHARLESTON BLVD, SUITE 104**
**LAS VEGAS, NV 89102**

# MORTGAGE

LOAN # 0008675142

THIS MORTGAGE ("Security Instrument") is given on **March 26th, 1999** . The mortgagor is
**MARK S BUTTERLINE and LISA BUTTERLINE**

("Borrower"). This Security Instrument is given to
**CONTIMORTGAGE CORPORATION**

which is organized and existing under the laws of **DELAWARE** , and whose
address is **338 S. WARMINSTER ROAD, HATBORO, PA 19040-3430**

("Lender"). Borrower owes Lender the principal sum of

**FORTY SIX THOUSAND EIGHT HUNDRED & 00/100** Dollars (U.S. $ **46,800.00** ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on **April 1, 2014** . This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of
this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in
**Philadelphia** County, Pennsylvania:

**SEE EXHIBIT "A"**

which has the address of **2713 EAST HUNTINGTON STREET, PHILADELPHIA** [Street, City],
Pennsylvania **19125** [Zip Code] ("Property Address");

PENNSYLVANIA - Single Family - FNMA/FHLMC
    UNIFORM INSTRUMENT Form 3039 9/90
  6R(PA) (9410)          Amended 5/91
      VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 6          Initials: MSB  L.B.





ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, Situate on the northeasterly side of Huntingdon Street at the distance of 107 feet Northwestwardly from the northwesterly side of Salmon Street in the 31st formerly part of the 18th Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said Huntingdon Street 17 feet and extending of that width in length or depth Northeastwardly between lines parallel with said Salmon Street, 70 feet.

BEING known as No. 2713 E. Huntingdon Street.

PLOT/PLAN NO. 20N8-150        BOARD OF REVISION NO. 31-4-166400        31ST WARD

BEING the same premises which Lisa Butterline, by Indenture dated December 9, 1997 and recorded in the Office of the Recorder of Deeds in and for the County of Philadelphia in Deed Book JTD 538 page 52, granted and conveyed unto Lisa Butterline and Mark S. Butterline, husband and wife.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

6R(PA) (9410)                                        Page 2 of 6

Form 3039 9/90
Initials: M.S.B.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

Form 3039 9/90
Initials:

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

6R(PA) (9410)                    Page 4 of 6

Form 3039 9/90

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by applicable law.**

**22. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

6R(PA) (9410)

Page 5 of 6

Form 3039
Initials:

**24. Reinstatement Period.** Borrower's time to reinstate provided in paragraph 18 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**25. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**26. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**27. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

☐ Adjustable Rate Rider            ☐ Condominium Rider                   ☐ 1-4 Family Rider
☐ Graduated Payment Rider          ☐ Planned Unit Development Rider      ☐ Biweekly Payment Rider
☐ Balloon Rider                    ☐ Rate Improvement Rider              ☐ Second Home Rider
☐ VA Rider                         ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____                    _____ (Seal)
                                                     MARK S BUTTERLINE                    -Borrower

_____                    _____ (Seal)
                                                     LISA BUTTERLINE                      -Borrower

_____ (Seal)             _____ (Seal)
                                  -Borrower                                              -Borrower

Certificate of Residence
I, _____ , do hereby certify that the correct address of
the within-named Mortgagee is 338 S. WALMINSTER ROAD, HATBORO, PA 19040-3V30

Witness my hand this 26TH                day of MARCH , 1999.

_____
                                                                        Agent of Mortgage

**COMMONWEALTH OF PENNSYLVANIA,**            MONTGOMERY            County ss:

On this, the **26th** day of **March** , 1999 , before me, the undersigned officer,
personally appeared **MARK S BUTTERLINE and LISA BUTTERLINE**

Notarial Seal
Susan R. Strohmeier, Notary Public
Plymouth Twp., Montgomery County
My Commission Expires June 30, 2001
Member, Pennsylvania Association of Notaries

person s       whose name On  subscribed to the within instrument and acknowledged that (or satisfactorily proven) to be the
executed the same for the purposes herein contained.
    IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

Notarial Seal
Susan R. Strohmeier, Notary Public
Plymouth Twp., Montgomery County
My Commission Expires June 30, 2001
Member, Pennsylvania Association of Notaries

_____
Title of Officer

-6R(PA) (9410)                          Page 6 of 6                          Form 3039 9/90

Exhibit 2

# GMAC RFC - Investment Capital Group

Homecomings Financial Network

**Document Lead Sheet**

Asset_Seq_ID: 70536

Servicer_ID: GMACM

RFC_Seq_ID: 9153503

Seller_Ref_ID: 4772546

Servicer_Seq_ID:

Previous_Servicer_Seq_ID:

Doc_Seq_ID: 536172

DocType: NOTE                    From:                    To:

Doc_Receipt_Date: 07/12/2004

| Media: | ORIGINAL UNRECORDED | | |
|---|---|---|---|
| Borrower last | BUTTERLINE | | **George Lazo** |
| Resolution Type | | Finance Partner | Collateral File Location |
| Resolution Date | | Finance Date Start | SAN DIEGO VAULT |
| Pool | | Finance Date End | ARE003 |
| | | Lead Sheet Generated | Monday, July 12, 2004 |

# BALLOON NOTE
### (Fixed Rate)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

**March 26**          , 19   **99**

[City]                                    ,                    [State]

**2713 EAST HUNTINGTON STREET, PHILADELPHIA, Pennsylvania 19125**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $          **46,800.00** (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
**CONTIMORTGAGE CORPORATION** .
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of          **8.900**          %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the          **1st**          day of each month beginning on
**May**          , 19 99 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on          **April 1     2014**          ,          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at          **338 S. WARMINSTER ROAD**
**HATBORO, PA 19040-3430**          or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $          **373.21** .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of
**15**          calendar days after the date it is due, I will pay a late charge to the Note Holder.
The amount of the charge will be          **5.00**  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE BALLOON FIXED RATE NOTE - Single Family - FNMA UNIFORM INSTRUMENT
Page 1 of 2
~870 (9709).02          VMP MORTGAGE FORMS - (313)293-8100 - (800)521-7291

Form 3260 3/92
Initials: 

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL (S) OF THE UNDERSIGNED.

_____ (Seal)
MARK S BUTTERLINE — Borrower

_____ (Seal)
— Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE
CONTIMORTGAGE CORPORATION

_____ (Seal)
— Borrower

_____ (Seal)
EDDIE VADELL, — Borrower
AUTHORIZED SIGNATORY *(Sign Original Only)*

## PREPAYMENT PENALTY NOTE ADDENDUM

For a valuable consideration, receipt of which is hereby acknowledged the undersigned agree that certain Promissory Note of even date to which this Addendum is attached, shall be subject to the following provisions, notwithstanding any provisions to the contrary contained in said promissory note or the Truth-in-Lending Disclosure, Deed of Trust, Mortgage, Real Estate Mortgage, Security Deed (Security Instrument) securing same.

This Addendum is attached to and made a part of that certain Promissory Note given by
**MARK S BUTTERLINE**

(Borrower) to

CONTIMORTGAGE CORPORATION

(Lender), dated

March 26th, 1999 ,which Note is in the principal amount of $ 46,800.00
* Notice - This loan is made in Compliance with the Alternative Mortgage Transaction
PREPAYMENT PENALTY
Parity Act.

After three (3) full years from the date hereof, maker may pre-pay in whole or in part, without penalty, the then outstanding principal balance. In the event maker prepays any portion of the outstanding principal balance and accrued interest during the first three (3) years from the date hereof, maker shall pay in addition to such prepayment a penalty in an amount equal to a percentage of the principal portion of the amount so pre-paid in accordance with the following:

If paid during the first year from the date hereof, THREE percent (3.000 %) of the portion of such prepayment equal to the principal amount so prepaid.

If paid during the second year from the date hereof, THREE percent (3.000 %) of the portion of such prepayment equal to the principal amount so prepaid.

If paid during the third year from the date hereof, THREE percent (3.000 %) of the portion of such prepayment equal to the principal amount so prepaid.

Holder shall apply any prepayment first to reduce any interest and charges owing at the time of such prepayment and then to reduce the amount of principal owed under this Note, provided that such balance shall be applied to the principal in reverse order of the due date of each payment and shall not otherwise affect or delay the due date of the next payment under the Note.

Borrower MARK S BUTTERLINE                                    Date 3/26/99

Borrower                                                      Date

Borrower                                                      Date

Borrower                                                      Date

E

# Exhibit 3



# OFFICE OF THE SHERIFF
### City and County Philadelphia

## *SHERIFF Jewell Williams*

### ·PHILADELPHILA SHERIFF'S REAL ESTATE DIVISION

| | |
|---|---|
| **FROM:** | |
| Drew | Melissa Simpson |
| **COMPANY:** | **DATE** 4/20/15 |
| **FAX NUMBER:** 215-231-0061 | **TOTAL NO. OF PAGES, INCLUDING COVER:** 3 |
| **PHONE NUMBER:** | **SENDER'S REFERENCE NUMBER:** 6-363 |
| **RE:** 2713 E. Huntington St. | **YOUR REFERENCE NUMBER:** |

**URGENT**  **FOR REVIEW**  **PLEASE COMMENT**  **PLEASE REPLY**  **PLEASE RECYCLE**

**NOTES/COMMENTS**

Distribution Screen Attached.

| FEE | Case# | Street Addres | Unit | CLR |
|---|---|---|---|---|
| | | | | 5.53 |
| | Defendant: | | | |

| Assessment | Fair Market Value | Opening Bid | Purchase Price | ☑ Bidding |
|---|---|---|---|---|
| $32,000.00 | $176,960.00 | $14,700.00 | $93,000.00 | |

PLAINTIFF ☑    ASSIGNED ☐    STAYED ☐    THIRD PARTY ☐

| | | | | |
|---|---|---|---|---|
| Delinquent Real Estate Tax | $0.00 | | Advertising | $1,661.61 |
| Current Real Estate Tax | $0.00 | | Writ/Rec Proc ☑ | $100.00 |
| Tax Lien Sale | $0.00 | | Staying Sale | $0.00 |
| Water Rents | $5,603.63 | | Conduct/Proc ☑ | $200.00 |
| Nuisance Claim | $0.00 | | Commission | $2,160.00 |
| Meter Install | $0.00 | | Prothonotary 1 ☐ | $0.00 |
| City Transfer Tax 0.16590 | $5,308.80 ☑ | | Acknow Deed ☑ | $4.00 |
| State Transfer Tax 0.05530 | $0.00 ☐ | | Prothonotary 2 ☐ | $0.00 |
| Record Deed 3 | $230.00 ☑ | | City Attorney ☐ | $0.00 |
| PCW | $229.07 | | Deed Prepare 1 ☐ | $0.00 |
| | | | Recertification 0 | $0.00 |
| Petition & Rule: | $0.00 | | Distribution Polic | $676.00 |
| Search. | $0.00 | | Condo Fees | $0.00 |
| | | | City Law Cost | $0.00 |

| | | |
|---|---|---|
| Total Deposits | $13,246.11 | adjustment 10/1/2007    $116.00 |
| Attorney Refund: | $0.00 | |
| Total Charges | $16,291.11 | $0.00 |
| Policy Fund Distribution | $0.00 | |
| Plaintiff Owe's: | $3,045.00 | $0.00 |
| Account Balance: | ($3,045.00) | $0.00 |

| DEPOSITS | | | | ADVERTISING | |
|---|---|---|---|---|---|
| Check # | Date | Category | Amount | DATE | AMOUNT |
| Adjustment | 10/1/2007 | Adjustment | $116.00 | | $1,597.41 |
| 206895 | 8/20/2011 | Deposit With Writ | $1,700.00 | | $64.20 |
| 51623 | 11/1/2011 | Deposit At Sale (Su | $8,278.00 | | |
| 221802 | 7/11/2012 | Balance On Sale | $1,261.50 | | |
| 221824 | 7/13/2012 | Additional Deposits | $3,152.11 | | |
| Adjustment | 8/29/2012 | Adjustment | ($1,261.50) | | |

POLICY #                                    DISTRIBUTION          REAL DEBT:          $62,764.79

Received:                                      AGENCY

Exhibit 4

**BLANK ROME LLP**
Kevin C. Rakowski, Esquire
PA ID# 80739
Kevin G. McDonald, Esquire
PA ID # 203783
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Tel: (215) 569-5000
Fax: (215) 569-5555
KMcDonald@BlankRome.com
*Attorneys for Defendant,*
*The Bank of New York Mellon*

Filed and Attested by
PROTHONOTARY
31 DEC 2014 01:18 pm
K. KALOGRIAS

| | |
|---|---|
| STEPHEN AND MIKAL BENCZE<br>2715 E. HUNTINGDON STREET<br>Philadelphia, PA 19125 | :   IN THE COURT OF<br>:   COMMON PLEAS<br>:   OF PHILADELPHIA COUNTY,<br>:   PENNSYLVANIA<br>: |
|                 Plaintiffs, | :   CIVIL DIVISION<br>: |
| v. | :<br>:   Case No. 141003255 |
| LIBERTY MUTUAL INSURANCE COMPANY<br>P.O. Box 1053<br>Montgomeryville, PA 18936-1053 | :<br>:<br>: |
|      and | :<br>: |
| BANK OF NEW YORK MELLON<br>1 Wall Street<br>New York, NY 10286 | :<br>:<br>: |
|              Defendants. | :<br>: |

## PRAECIPE FOR WRIT OF POSSESSION

To The Prothonotary of Philadelphia County:

Please issue a writ of possession in the above captioned action pursuant to the attached

Court Order of December 23, 2014 for the real property known as 2713 East Huntington Street,

Philadelphia, Pennsylvania (the "Premises") and direct the Sheriff to deliver actual possession of

the Premises to Bank of New York Mellon by ejecting Mark Butterline and Lisa Butterline from

the Premises within seven (7) days as set forth in the Order of December 23, 2014, using such

Case ID: 141003255

force as may be necessary to enter upon the Premises, including by the breaking in of any door

or otherwise as set forth in the said Order.

BLANK ROME LLP

Dated: December 24, 2014          By: _____

Kevin C. Rakowski, Esquire
PA ID# 80739
Kevin G. McDonald, Esquire
PA ID # 203783
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Tel: (215) 569-5000
Fax: (215) 569-5555
KMcDonald@BlankRome.com
*Attorneys for Defendant,*
*The Bank of New York Mellon*

140383.01165/12470349v.1

Case ID: 141003255

## CERTIFICATE OF SERVICE

I, Kevin G. McDonald, Esquire hereby certify that on this 31st day of December 2014, a copy of the within Praecipe for Writ of Possession was served via overnight express shipping upon the following parties:

Therese Allison, Esquire
Sherman Toppin Law Firm
1800 JFK Blvd, Suite 300
Philadelphia, PA 19103
*Attorneys for Plaintiffs*

Mark & Lisa Butterline
2713 East Huntington Street
Philadelphia, PA 19125

Kevin G. McDonald

140383.01165/12470349v.1

Case ID: 141003255

| STEPHEN AND MIKAL BENCZE | : | IN THE COURT OF |
| 2715 E. HUNTINGDON STREET | : | COMMON PLEAS |
| Philadelphia, PA 19125 | : | OF PHILADELPHIA COUNTY, |
| | : | PENNSYLVANIA |
| | : | |
| Plaintiffs, | : | CIVIL DIVISION |
| | : | |
| v. | : | |
| | : | Case No. 141003255 |
| LIBERTY MUTUAL INSURANCE COMPANY | : | |
| P.O. Box 1053 | : | |
| Montgomeryville, PA 18936-1053 | : | RECEIVED |
| | : | |
| and | : | DEC 2 3 2014 |
| | : | OFFICE OF JUDICIAL |
| BANK OF NEW YORK MELLON | : | RECORDS |
| 1 Wall Street | : | |
| New York, NY 10286 | : | |
| | : | |
| Defendants. | : | |

## ORDER

AND NOW, this 23rd day of December, 2014, upon consideration of the Petition for Plaintiff for a Preliminary Injunction and the oral arguments set forth December 23, 2014 it is hereby ORDERED and DECREED that the Petition is DENIED without prejudice.

It is FURTHER ORDERED that in accordance with Judge Tucker's October 15, 2013 Order Granting Summary Judgment in favor of The Bank of New York Mellon Trust Company, N.A. and against Defendants Mark and Lisa Butterline for possession of the property located at 2713 East Huntington Street, Philadelphia, PA 19125 in the matter of *The Bank of New York Mellon Trust Company, N.A. v. Lisa Butterline, et al.* (Case ID No.: 121102761);

1. Defendant, Bank of New York Mellon will file a Praecipe for Writ of Possession of the property located at 2713 East Huntington Street, Philadelphia, PA 19125 (the "Property") within 24 hours of this Order being entered;

2. The Prothonotary of Philadelphia County shall forthwith issue the Writ of Possession for the real property known as 2713 East Huntington Street, Philadelphia, PA 19125

Bencze Etal Vs Bank Of -ORDER

14100325500017

Case ID: 141003255
C. N. 14112482

and direct the sheriff to deliver actual possession of 2713 East Huntington Street, Philadelphia, PA 19125 to Bank of New York Mellon by ejecting Mark and Lisa Butterline within seven (7) days using such force as may be necessary to enter upon the Property including by the breaking in of any door; at the sheriff's discretion ~~Null~~

3. On the date of ejectment of Mark and Lisa Butterline from the Property, Bank of New York Mellon will be present and will immediately secure the Property to prevent anyone other than an authorized representative of Bank of New York Mellon from entering the property;

4. Within ten (10) days of the date of actual possession, Bank of New York Mellon shall retain a qualified and insured contractor who has a business license in the City of Philadelphia to commence work to correct any and all violations issued by the City of Philadelphia, Department of License and Inspections and shall repair and maintain the Property in such a way as to prevent damage to Plaintiff's property; and

5. Bank of New York Mellon will complete the necessary repairs as soon as reasonably possible and shall maintain the property in accordance with the rule and regulations set forth by the City of Philadelphia.

BY THE COURT:

The Honorable Nina Wright Padilla

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

| | |
|---|---|
| **BANK OF NEW YORK MELLON** | : **NOVEMBER TERM, 2012** |
| **TRUST CO., NA, AS TRUSTEE, F/K/A** | : |
| **THE BANK OF NEW YORK TRUST** | : **NO. 2761** |
| **COMPANY NA, AS TRUSTEE, AS** | : |
| **SUCCESSOR TO JPMORGAN CHASE** | : **Control No. 13090638** |
| **BANK NA AS TRUSTEE FOR RAAC** | : |
| **2005RP1** | : |
| **v.** | : |
| | : |
| **LISA and MARK S. BUTTERLINE, AND** | : |
| **OCCUPANTS** | : |

## O R D E R

AND NOW, this $15$ day of $October$ , 2013, upon

consideration of the Plaintiff's Motion for Summary Judgment, and the response thereto,

it is hereby **ORDERED** and **DECREED** that said Motion is **GRANTED** and Judgment

is entered in favor of Plaintiff and against Defendants for possession of the property

located at 2713 East Huntington Street, Philadelphia, PA 19125.

**DOCKETED**

OCT 1 7 2013

R. POSTELL
DAY FORWARD

**BY THE COURT:**

_____
LEON W. TUCKER, J.

The Bank Of New York Me-WSJDM

12110276100025

Case ID: 141003255

*Ejectment*
*Quiet Title*

# Commonwealth of Pennsylvania
# County of Philadelphia

## COURT OF COMMON PLEAS

STEPHEN AND MIKAL BENCZE

*vs.*

BANK OF NEW YORK MELLON, ET AL.

October _____ Term, 20 14

No. 3255 _____

# Writ of Possession

To the Sheriff of Philadelphia County:

(1)  To satisfy the judgment for possession in the above matter you are directed to deliver possession of the following described property to:

BANK OF NEW YORK MELLON

(2)  To satisfy the costs against

MARK AND LISA BUTTERLINE

you are

directed to levy upon any property of

2713 East Huntington Street, Philadelphia, Pennsylvania

and sell

interest therein.



JOSEPH H. EVERS
*Prothonotary*

By _____

C

141003255
31 DEC 2014 01:18 pm
K. KALOGRIAS

Date _____

Case ID: 141003255

# Court of Common Pleas

October _____ Term, 20 14

No. 3255

STEPHEN AND MIKAL BENCZE

*vs.*

BANK OF NEW YORK MELLON, ET AL.

2713 East Huntington Street Philadelphia, PA 19125

## WRIT OF POSSESSION

Attorney for Bank of New York Mellon, et al

Blank Rome LLP

One Logan Square

130 North 18th Street

Philadelphia, PA 19103

215-569-5500

## DESCRIPTION

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, Situate on the northeasterly side of Huntingdon Street at the distance of 107 feet Northwestwardly from the northwesterly side of Salmon Street in the 31st formerly part of the 18th Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said Huntingdon Street 17 feet and extending of that width in length or depth Northeastwardly between lines parallel with said Salmon Street, 70 feet.

BEING known as No. 2713 E. Huntingdon Street.

PLOT/PLAN NO. 20NB-150    BOARD OF REVISION NO. 31-4-166400.  31ST WARD

BEING the same premises which Lisa Butterline, by Indenture dated December 9, 1997 and recorded in the Office of the Recorder of Deeds in and for the County of Philadelphia in Deed Book JTD 538 page 52, granted and conveyed unto Lisa Butterline and Mark S. Butterline, husband and wife.

Property Address: 2713 East Huntington Street, Philadelphia, PA 19125