# Exhibit 5

SHERMAN TOPPIN LAW FIRM LLC
THERESE ALLISON, ESQUIRE
PA ID: 313956
1800 JFK BOULEVARD, SUITE 300
PHILADELPHIA, PA 19103
TELEPHONE: (215) 564-3600
FACSIMILE: (888) 521- 5302
EMAIL: tallison@shermantoppin.com

Filed and Attested by
PROTHONOTARY
27 OCT 2014 04:43 pm
D. SAVAGE

Attorney for Plaintiffs
STEPHEN AND MIKAL BENCZE

| | | |
|---|---|---|
| STEPHEN AND MIKAL BENCZE | : | IN THE COURT OF |
| 2715 E. HUNTINGDON STREET | : | COMMON PLEAS |
| Philadelphia, PA 19125 | : | OF PHILADELPHIA COUNTY, |
| | : | PENNSYLVANIA |
| | : | |
| Plaintiffs, | : | CIVIL DIVISION |
| | : | |
| v. | : | |
| | : | |
| LIBERTY MUTUAL INSURANCE COMPANY | : | |
| P.O. Box 1053 | : | |
| Montgomeryville, PA 18936-1053 | : | |
| | : | |
| and | : | |
| | : | |
| BANK OF NEW YORK MELLON | : | |
| 1 Wall Street | : | |
| New York, NY 10286 | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

NOW COMES Stephen and Mikal Bencze, by and through their attorney, Therese Allison Esquire, file this Complaint and in support thereof states as follows:

## THE PARTIES

1.      Plaintiffs, Stephen and Mikal Bencze (hereinafter "Plaintiffs" or "the Benczes"), are married adult individuals residing at 2715 E. Huntingdon Street, Philadelphia, Pennsylvania 19125.

Case ID: 141003255

2.      Defendant, Liberty Mutual Insurance Company, (hereinafter "Liberty Mutual") is corporation doing business in the Commonwealth of Pennsylvania with a principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02116.

3.      Defendant, Bank of New York Mellon (hereinafter "BNYM"), is a corporation doing business in the Commonwealth of Pennsylvania with a  principal place of business located at 1 Wall Street, New York, NY 10286.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter as a trial court of general jurisdiction.

5.      Venue is proper as the subject property of this litigation is located within the City and County of Philadelphia, Pennsylvania.

## THE PROPERTY

6.      The property at issue in this case is a single family row home located at 2715 E. Huntingdon Street, Philadelphia, Pennsylvania  19125.

## THE FACTS

7.      Plaintiffs, Stephen and Mikal Bencze, are the owners of the two story, single family row home located at 2715 E. Huntingdon Street, Philadelphia, PA 19125 (the "Property").

8.      Defendant Liberty Mutual provides homeowner's insurance to the Benczes.  The homeowner's insurance policy issued by Defendant was in effect at all times for the events discussed herein.  A copy of Plaintiffs' homeowner's insurance policy issued by Defendant is attached hereto as Exhibit "A".

9.      The property located at 2713 E. Huntingdon Street, Philadelphia, PA 19125 (the "Adjoining Property") is a three story row home that is adjoining to the Property.

10.     Defendant BNYM is the owner of the Adjoining Property.

Case ID: 141003255

11.     Upon information and belief Defendant BNYM contracted with or employed a management company or managers to provide management services to the Adjoining Property during the period of events discussed herein.

12.     The Adjoining Property was occupied by Mark and Lisa Butterline (hereinafter "the Butterlines") for the dates discussed herein until on or about January, 2014.

13.     The Property and the Adjoining Property share a common two story wall.  The Adjoining Property has an additional 3rd floor that does not share a common wall with the Property.

14.     On or about October 29, 2012, the stucco on the Adjoining Property's exterior 3rd floor wall, which rises one floor above the Property, fell onto Plaintiffs' roof causing puncture holes in the Property roof as well as a separation of the Property's roof flashing from the Adjoining Property's adjoining wall.  Images of the damage sustained to the Property are attached hereto as Exhibit "B".

15.     On October 29, 2012, after discovering that the Adjoining Property's stucco fell onto their roof, Plaintiffs contacted Defendant Liberty Mutual to notify Defendant of the damage sustained to their roof and to make a claim for insurance proceeds.

16.     Thereafter Plaintiffs attempted have the damage to the roof of the Property repaired.  However, the roof repair persons were only able to patch the puncture holes in the roof of the Property.

17.     The roof repair persons informed the Benczes that the roof could not be flashed to the Adjoining Property wall because the Adjoining Property's exterior 3rd floor wall was crumbling and in complete disrepair and therefore the flashing would not attach to the wall.

Case ID: 141003255

18.     From October 29, 2012, when the Adjoining Property's stucco fell onto the roof of the Property resulting in a separation of the Property's roof flashing, and for a period of almost two years, rain water and other weather elements entered the Property

19.     At the time that the damage was sustained to the Property's roof the Butterlines occupied of the Adjoining Property.

20.     On or about November, 2012 the Benczes informed the Butterlines that they were unable to repair their roof because the flashing could not be attached the Adjoining Property's exterior 3rd floor wall.

21.     The Benczes requested that the Butterlines repair the exterior 3rd floor wall of the Adjoining Property but they refused to makes any repairs to the wall.

22.     The Butterlines refused to permit the Benczes to access or make repairs to the Adjoining Party's damaged exterior 3rd floor wall.

23.     On or about December 28, 2012 Plaintiff Mikal Bencze contacted Defendant BNYM, the owner of the Adjoining Property, to inform Defendant of the damage caused to the Property as a result of the Adjoining Property's falling stucco and of the state of disrepair of the Adjoining Property's 3rd floor wall.

24.     On that date Plaintiff Mikal Bencze spoke with Anthony Mancuso in Defendant BNYM's legal department.  Mr. Mancuso directed Plaintiff Mikal Bencze to file a report with Defendant BNYM for a residential foreclosed property and she filed said report on that same date.

25.     On December 28, 2012 in response to request to the report filed by Plaintiff with BNYM, Plaintiff provided evidence to BNYM that BNYM owned the Adjoining Property by emailing an image from the Philadelphia Board of Revision of Taxes ("BRT") website where BNYM is listed as the owner of Property since July 23, 2012.  A copy the page from the BRT

Case ID: 141003255

website showing Defendant as owner of the Adjoining Property is attached hereto as Exhibit "C".

26.    Upon information and belief Philadelphia's Office of Licenses and Inspections ("L&I") has multiple open violations citing the Adjoining Property for failure to repair, maintain and make weather tight the adjoining wall and for other violations.   Copies of the open L&I violations on the Adjoining Property are attached hereto as Exhibit "D".

27.    Upon information and belief Defendant BNYM failed to make the repairs required by the citations issued by Philadelphia's L&I.

28.    Despite information about the state of disrepair of the Adjoining Property and the fact that said disrepair was causing substantial and ongoing damage to Plaintiffs' Property delivered on or about December 28, 2012, Defendant BYNM failed to repair or cause repairs to be made to the Adjoining Property's exterior 3rd floor wall.

29.    For the period between January, 2013 and up until the date of the filing of this Complaint Plaintiffs attempted to make contact and follow up with any and all management companies and insurers that were employed, contracted or licensed by or with Defendant BNYM.  Despite Plaintiffs repeated demands and communication of the imminent threat caused by the Adjoining Property, at no time did any party associated with Defendant BNYM cause repairs to be made to the Adjoining Property.

30.    On or about January 2014 Defendants BNYM evicted the Butterlines from the Adjoining Property.

31.    Upon information and belief, on or about February 2, 2014, the Butterlines or other individuals, entered into the Adjoining Property and turned on the water causing substantial flooding to the Adjoining Property, which thereafter leaked into the basement of the Property through the adjoining wall (the "February Flooding").

Case ID: 141003255

32.     The February Flooding caused substantial damage to the Property.

33.     After sustaining the initial damage to the Property on October 29, 2012 Plaintiffs immediately notified Defendant Liberty Mutual of the damage, protected the Property from additional damage to the maximum extent possible by deploying a tarp over the damaged portion of their roof and made all repairs to the Property that could be made to protect it from further damage.

34.     Plaintiffs maintained an inventory of damaged personal property as well as bills and receipts and related documents that justify the figures.

35.     In addition, Plaintiffs showed the Property to Defendant Liberty Mutual and provided Defendant with records and documents as requested by Liberty Mutual.

36.     At no time did Liberty Mutual request a signed sworn proof of loss statement from Plaintiffs.

37.     Plaintiffs maintained contact with Defendant Liberty Mutual from the date of initial damage until the date of the filing of this Complaint.

38.     On or about August, 2014 Plaintiffs' roofing experts informed Plaintiffs that it was possible that the roof beams of the Property could collapse if they continued to incur water infiltration damage.

39.     On September 14, 2014, after repeated demands to Defendant BNYM, its employees, agents and/or licensees, to repair the Adjoining Property's exterior 3rd floor wall without result, and as a result of concerns of possible imminent physical threat and catastrophic property damage that might occur if Property's roof beams collapsed, Plaintiffs' caused the Adjoining Property's 3rd floor wall to be repaired and the flashing to attach to the Property.

40.     On December 15, 2014, after failing to receive compensation for damages sustained to their Property from Defendant Liberty Mutual, Plaintiffs demanded from Defendant

Case ID: 141003255

compensation for damages to the Property that are covered by their homeowner's insurance policy. Defendant Liberty Mutual failed to issue payment for said damages. A copy of said Demand Letter is attached hereto as Exhibit "E".

41.     On December 15, 2014, after failing receive compensation for damages sustained to their Property, Plaintiffs demanded from Defendant BNYM compensation for all damages sustained to Plaintiffs and their Property. Defendant BNYM failed to issue payment for said damages.

42.     From October 29, 2012 when the initial damage to the Property roof and flashing was sustained by falling stucco from the Adjoining Property, Plaintiff's Property has sustained substantial water and weather element damage to the basement, first and second floors and to the roof of the Property.

43.     The water and weather element damage as well as the February Flooding caused substantial flooding damage to the basement of the Property thereby making it impossible for Plaintiff Mikal Bencze to operate her home based business, which requires the use of specialized equipment which is located in the basement, and, because of its size, can only be located in the basement of the Property.

44.     The water, weather element and flooding damage sustained to the Property resulted in mold development in the Property and caused adverse reactions in Plaintiffs Mikal and Stephen Benczes which required medical attention.


## COUNT I AGAINST DEFENDANT BNYM– PRIVATE NUISANCE

45.     Plaintiffs incorporate the above paragraphs as if they were set forth fully herein.

46.     Plaintiffs have the right and privilege to the use the Property without water infiltration caused by Defendant's Adjoining Property.

Case ID: 141003255

47.     The invasion of water created by Defendant's Adjoining Property is substantial in that it has occurred over a long period of time and has continued unabated resulting in water damage to every level of Plaintiffs' Property, and has caused mold and other damages to the Property.

48.     Defendant's conduct in failing to maintain and repair the Adjoining Property is the legal cause of the invasion.

49.     The invasion of water from Defendant's Adjoining Property is unreasonable and is actionable under the rules governing liability for negligent, reckless and/or "abnormally dangerous" conduct.

50.     The condition of Defendant's Adjoining Property constitutes a private nuisance under the laws of the Commonwealth of Pennsylvania:

**WHEREFORE,** Plaintiff prays:

(a) That an injunction be issued, preliminary until final hearing and permanent thereafter, to order Defendant BNYM to correct any and all violations issued by the City of Philadelphia, Department of Licenses and Inspection and to repair and maintain the exterior 3rd floor wall and maintain the Adjoining Property in such a way as to prevent damage to Plaintiffs' Property from water or otherwise:

(b) Such other equitable relief as may be just and proper.

## COUNT II – TRESPASS

51.     Plaintiffs incorporate the above paragraphs as if they were set forth fully herein.

52.     Defendant has intentionally let the Adjoining Property fall into disrepair resulting in collapse of the exterior of the 3rd floor wall and structures.

8

Case ID: 141003255

53.     Upon information and belief, Defendant's failure to make repairs to the Adjoining Property have altered the natural water course that has resulted in the infiltration of water into the Property.

54.     Defendant's inaction has resulted in a continuing trespass.

55.     Defendant is liable in trespass for the unlawful discharge of surface waters into Plaintiffs' Property.

**WHEREFORE,** Plaintiff prays:

(a) That an injunction be issued, preliminary until final hearing and permanent thereafter, to order Defendant BNYM to correct any and all violations issued by the City of Philadelphia, Department of Licenses and Inspection and to repair and maintain the exterior 3rd floor wall and maintain the Adjoining Property in such a way as to prevent damage to Plaintiffs' Property from water or otherwise:

(b) Such other equitable relief as may be just and proper.

## COUNT III AGAINST BNYM - NEGLIGENCE

56.     Plaintiffs incorporate the above paragraphs as if they were set forth fully herein.

57.     At all times mentioned herein, Defendant, through its agents, servants, workmen and employees, maintained supervision and control of the Adjoining Property.

58.     Defendant owes a duty to Plaintiffs and the City of Philadelphia and its citizens to maintain its property so as not to harm or damage other persons and property.

59.     Defendant and/or its agents, servants, workmen and employees were negligent by:

    a.  Failing to maintain the exterior 3rd floor wall of the Adjoining Property;

    b.  Failing to correct code violations issued by the City of Philadelphia;

9

Case ID: 141003255

c.  failing to maintain Defendant's property pursuant to the Philadelphia Property Maintenance Code;

d.  failing to secure Defendant's property pursuant to the Philadelphia Property Maintenance Code;

e.  failing to maintain Defendant's property so as not to permit an unnatural course of water to infiltrate Plaintiffs' Property;

f.  failing to prevent an unnatural course of water and/or storm water from infiltrating Plaintiffs' property;

g.  failing to repair the walls of defendant's property;

h.  allowing the exterior walls to deteriorate and collapse causing a dangerous condition;

60.  As a result of Defendant's negligence, Plaintiffs have suffered the following damages:

a.  Cost of previously conducted environmental testing for the amount of $900.00;

b.  Cost to remediate roof damage by use of tarp for the amount of $600.00;

c.  Estimated cost for roof repair and demolition, repair to interior of the Property and mold remediation in the amount of $39,000.00;

d.  Moving, storage and short term apartment rental in the amount of $27,000.00;

e.  Loss of home based business in the amount of $10,000;

f.  Medical expenses in the amount of $400.00; and

g.  Diminution in value of Plaintiffs' Property.

Case ID: 141003255

61. Despite repeated demand, Defendant has failed and refused to repair and secure the Adjoining Property as stated above and Plaintiff continues to suffer damages due to Defendant's ongoing and continuing negligence.

62. **WHEREFORE,** Plaintiff demands judgment against Defendant for an amount in excess of $90,000 including pre-judgment interest and costs.

## COUNT IV AGAINST LIBERTY MUTUAL – BREACH OF CONTRACT

63. The homeowner's insurance policy is a duly executed contract that remains in effect between Plaintiff and Defendant.

64. Defendant breached the contract when it failed to issue covered property losses to Plaintiffs.

65. As a result of Defendant's breach of the homeowner's insurance policy contract Plaintiffs have suffered

    a. Cost of previously conducted environmental testing for the amount of $900.00;

    b. Cost to remediate roof damage by use of tarp for the amount of $600.00;

    c. Estimated cost for roof repair and demolition, repair to interior of the Property and mold remediation in the amount of $39,000.00;

    d. Moving, storage and short term apartment rental in the amount of $27,000.00;

    e. Loss of home based business in the amount of $10,000;

    f. Medical expenses in the amount of $400.00; and

    g. Diminution in value of Plaintiffs' Property.

66. Despite Plaintiffs' demand, Defendant has failed to issue payment for covered losses under the terms of the homeowner's insurance policy.

Case ID: 141003255

Dated:  October 27, 2014            SHERMAN TOPPIN LAW FIRM LLC




By:_____
       Therese Allison
       Attorney for Plaintiffs:
       STEPHEN AND MIKAL BENCZE

12

## **VERIFICATION**

I, Stephen Bencze, verify that the facts set forth in the foregoing Complaint are true and correct. The undersigned understands that false statements herein are made subject to the penalties of 18 Pa. C.S. 4904, relating to unsworn falsification to authorities.

Dated: October 27, 2014

STEPHEN BENCZE

Case ID: 141003255

# VERIFICATION

I, Mikal Bencze, verify that the facts set forth in the foregoing Complaint are true and correct. The undersigned understands that false statements herein are made subject to the penalties of 18 Pa. C.S. 4904, relating to unsworn falsification to authorities.

Dated:  October 27, 2014

_____
MIKAL BENCZE

Case ID: 141003255

## **CERTIFICATE OF SERVICE**

I, Sherman Toppin, Esquire, hereby certify that on September 29, 2014, a true and correct

copy of Plaintiffs' Complaint was served by email and first class mail, postage prepaid, upon:

(VIA MAIL AND EMAIL:                    (VIA MAIL AND EMAIL:
paul.englund@libertymutual.com)          kmcdonald@blankrome.com)
Liberty Mutual Insurance Company         Bank of New York Mellon
c/o Mr. Paul Englund                     c/o Mr. Kevin McDonald, Esq.
Senior Property Loss Specialist          Associate Attorney
Liberty Mutual Insurance                 Blank Rome LLP
P.O. Box 1053                            One Logan Square
Montgomeryville, PA 18936-1053           130 North 18th Street
                                         Philadelphia, PA 19103-6998


Date:  September 27, 2014                By:
                                         Therese Allison, Esquire
                                         Attorney for Plaintiffs,
                                         STEPHEN AND MIKAL BENCZE

15

# EXHIBIT A



**Liberty Mutual Insurance**

PO Box 9099
150 Liberty Way
Dover, NH 03820
Telephone: (603) 740-1200

July 23, 2014

CHRIS ENGLUND
255 PRIMERA BLVD
LAKE MARY, FL 32746
Attn:   CHRIS ENGLUND

**RE: MIKAL  BENCZE & STEPHEN  BENCZE**
**H37-288-355344-40**
**CLAIM ID: 024543509**
**DOL: 10/29/2012**
**POLICY EFFECTIVE:  6/29/2012**

I hereby certify that the attached is a true and accurate copy of the documents requested for the policy listed above as maintained by the Liberty Mutual Insurance Group Inc. in the usual and customary course of its business.

*Brittani Labrecque*

Brittani Labrecque, Office Assistant
Personal Insurance Production
July 23, 2014

BL
Enclosures

# Policy Declarations



A summary of your homeowners insurance coverage

Thank you for insuring with us. Here is your renewal homeowners policy summary, which is effective as of 06/29/2012.

 <u>INSURANCE INFORMATION</u>

| | |
|---|---|
| **Named Insured** | **Policy Number** |
| Mikal C Bencze | H37-288-355344-40 |
| Stephen Bencze | |
| Mailing Address | **Policy Period** |
| 2715 E Huntingdon St | 06/29/2012-06/29/2013  12:01AM |
| Philadelphia PA 19125-4007 | standard time at the address of the |
| | Named Insured at Insured Location. |

Insured Location
Same as Mailing address above

---

### Premium Summary

| | | |
|---|---|---|
| Standard Policy with HomeProtector Plus | $ | 635.00 |
| Additional Coverages | $ | 41.00 |
| | | |
| Total 12 Month Policy Premium | $ | 676.00 |

Your discounts and benefits have been applied to your total policy premium. Please refer to the Discounts and Benefits section for more details.

Through your affiliation with the Indiana University of Pennsylvania Alumni Association your policy includes exclusive group savings on your home insurance.
THIS IS NOT YOUR HOME INSURANCE BILL.

---

## Coverage Information

**Standard Policy with HomeProtector Plus**

| Section I Coverages | | LIMITS | PREMIUM |
|---|---|---|---|
| A. Dwelling with Expanded Replacement Cost | $ | 214,700 | |
| B. Other Structures on Insured Location | $ | 21,470 | |
| C. Personal Property with Replacement Cost | $ | 161,030 | |
| D. Loss of Use of Insured Location | Actual Loss Sustained | | |

Section II Coverages

| | | |
|---|---|---|
| E. Personal Liability (each occurrence) | $ | 300,000 |
| F. Medical Payments to Others (each person) | $ | 1,000 |

Policy Deductibles

Losses covered under Section I are subject to a deductible of : $1,000

| | | |
|---|---|---|
| Total Standard Policy with HomeProtector Plus | $ | 635 |

 QUESTIONS ABOUT YOUR POLICY?

By phone
1-215-925-7915

Liberty Mutual Office
111 S Independence Mall E Ste 710
Philadelphia PA 19106

To report a claim
By phone
1-800-225-2467

Online
LibertyMutual.com/ Claims

Policy Declarations

 Your policy includes HomeProtector Plus, which provides enhanced coverage in case of a loss. Please see your endorsement for details.



## Coverage Information (continued)

| Additional Coverages | DEDUCTIBLE | | LIMITS | | PREMIUM | |
|---|---|---|---|---|---|---|
| Credit Card, Fund Transfer Card, Forgery | | | $ | 1,000 | $ | 0 |
| Identity Fraud Expense | $ | 250 | $ | 15,000 | $ | 23 |
| Backup Of Sewer And Sump Pump Overflow Cov | $ | 1,000 | $ | 10,000 | | INCL |
| Home Computer Coverage | | | $ | 5,000 | $ | 18 |
| Coverage E increased limit | | | | | | INCL |
| Total Additional Coverages | | | | | $ | 41 |

## Discounts and Benefits

Your discounts and benefits have been applied to your total policy premium.
For more information on discounts, please visit LibertyMutual.com/home-discounts.

- Inflation Protection Discount
- Early Shopper Discount
- New Roof Discount
- Protective Device Discounts: Smoke/Heat Alarm-All Floors, Extinguishers and Dead Bolt Locks
- Claims Free Discount
- Recent Home Buyer Discount
- Multi Policy Discount - Auto

## Endorsements — Changes to Your Policy

- Home Protector Plus (FMHO-1183)
- Identity Fraud Expense (FMHO-2382)
- Credit Card, Fund Transfer Card, Forgery (HO 04 53 04 91)
- Special Provisions (FMHO 3080 0811)
- Homeowner Amendatory Endorsement (FMHO 3308 0811)
- Amendatory Mold End (FMHO-2199 R1)
- Inflation Protection (FMHO-2835)
- Fuel Storage Exclusion (FMHO-1097 1/97 )
- Backup Of Sewer And Sump Pump Overflow Cov (FMHO 3177 1208)
- Home Computer Coverage (FMHO-746 05/84)
- Protective Devices (HO 04 16 04 91)
- Pennsylvania Notice (HO-291 01/81)
- Amendmt Pol Definitions (FMHO-2934 7/04)
- No SecII/Limit I-Daycare (HO 04 96 04 91)
- Lead Poisoning Exclusion (FMHO-976 05/92)

## Mortgage Information

Mortgagee 1:
BAC HOME LOANS SERVICING LP
ISAOA ATIMA
LOAN NO. 216588464
PO Box 961206
Fort Worth, TX 76161-0206



## Important Messages

Flood Insurance: Your Homeowners policy does not provide coverage for damage caused by flood, even if the flood is caused by a storm surge. Liberty Mutual can help you obtain this coverage through the Federal Emergency Management Agency (FEMA) if your community participates in the National Flood Insurance Program. Please call your representative for more information.

Scheduled Personal Property: All personal property schedules are on file with the company. If there has been a change or addition to your scheduled property, a new copy of your personal property schedules will be provided in the endorsement section of this package.

Fraud Statement: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

LibertyGuard® Deluxe Homeowners Policy Declarations
Coverage provided and underwritten by Liberty Insurance Corporation, Boston MA.

This policy, including endorsements listed above, is countersigned by:

| _____ | _____ | _____ |
| Dexter R. Legg | David M. Long | Stephen McAnena |
| Secretary | President | Authorized Representative |



# LibertyGuard Deluxe Homeowners Policy

Please read your policy and each endorsement carefully.

**To serve you best...**

Liberty Mutual has over 350 service offices throughout the United States
and Canada. Please contact your service office shown on your Declarations
Page to report losses, or for any changes or questions about your insurance.
Payments should be sent to the office indicated on your bill.

THIS POLICY IS NON ASSESSABLE



# LIBERTYGUARD DELUXE HOMEOWNERS POLICY
## HO 00 03 EDITION 04 91

| **TABLE OF CONTENTS** | **Page** |
|---|---|
| Agreement............................................... | 1 |
| Definitions ............................................. | 1 |
| **SECTION I - PROPERTY COVERAGES** | |
| Coverage A Dwelling............................ | 1 |
| Coverage B Other Structures ................ | 2 |
| Coverage C Personal Property............... | 2-3 |
| Coverage D Loss of Use....................... | 3 |
| Additional Coverages........................... | 3 |
| Debris Removal................................. | 3 |
| Reasonable Repairs........................... | 3-4 |
| Trees, Shrubs and Other Plants .......... | 4 |
| Fire Department Service Charge.......... | 4 |
| Property Removed............................. | 4 |
| Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.................... | 4 |
| Loss Assessment ............................. | 4-5 |
| Collapse .......................................... | 5 |
| Glass or Safety Glazing Material ......... | 5 |
| Landlord's Furnishings ...................... | 5-6 |
| **SECTION I - PERILS INSURED AGAINST** | |
| Coverage A Dwelling and Coverage B Other Structures............................ | 6 |
| Coverage C Personal Property............... | 6-7 |
| **SECTION I - EXCLUSIONS** | |
| Ordinance or Law................................ | 7 |
| Earth Movement ................................. | 7-8 |
| Water Damage ................................... | 8 |
| Power Failure ..................................... | 8 |
| Neglect ............................................ | 8 |
| War ................................................... | 8 |
| Nuclear Hazard................................... | 8 |
| Intentional Loss ................................. | 8 |
| Weather Conditions............................. | 8 |
| Acts or Decisions................................ | 8 |
| Faulty, Inadequate or Defective............. | 8 |
| **SECTION I - CONDITIONS** | |
| Insurable Interest and Limit of Liability ... | 8 |
| Your Duties After Loss ........................ | 8-9 |
| Loss Settlement................................. | 9-10 |
| Loss to a Pair or Set ........................... | 10 |
| Glass Replacement ............................. | 10 |
| Appraisal ......................................... | 10 |

| | **Page** |
|---|---|
| Other Insurance ................................. | 10 |
| Suit Against Us .................................. | 10 |
| Our Option ........................................ | 10 |
| Loss Payment.................................... | 10 |
| Abandonment of Property..................... | 10 |
| Mortgage Clause................................. | 10 |
| No Benefit To Bailee............................ | 10 |
| Nuclear Hazard Clause........................ | 10-11 |
| Recovered Property............................. | 11 |
| Volcanic Eruption Period ...................... | 11 |
| **SECTION II - LIABILITY COVERAGES** | |
| Coverage E Personal Liability ................ | 11 |
| Coverage F Medical Payments to Others. | 11 |
| **SECTION II - EXCLUSIONS** | |
| Coverage E Personal Liability and Coverage F Medical Payments to Others ............ | 11-13 |
| Coverage E Personal Liability ................ | 13 |
| Coverage F Medical Payments to Others. | 13 |
| **SECTION II - ADDITIONAL COVERAGES** | |
| Claim Expenses .................................. | 13 |
| First Aid Expenses .............................. | 14 |
| Damage to Property of Others .............. | 14 |
| Loss Assessment................................ | 14 |
| **SECTION II - CONDITIONS** | |
| Limit of Liability.................................. | 14 |
| Severability of Insurance ...................... | 14 |
| Duties After Loss ............................... | 14-15 |
| Duties of an Injured Person .................. | 15 |
| Payment of Claim ............................... | 15 |
| Suit Against Us .................................. | 15 |
| Bankruptcy of an Insured ..................... | 15 |
| Other Insurance ................................. | 15 |
| **SECTIONS I AND II - CONDITIONS** | |
| Policy Period ..................................... | 15 |
| Concealment or Fraud ......................... | 15 |
| Liberalization Clause  ......................... | 15 |
| Waiver or Change of Policy Provisions ... | 15 |
| Cancellation ...................................... | 15-16 |
| Non-Renewal ..................................... | 16 |
| Assignment ....................................... | 16 |
| Subrogation ...................................... | 16 |
| Death................................................ | 16 |
| **\*MUTUAL POLICY CONDITIONS** ............. | 16 |

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.



| HOMEOWNERS 00 03 04 91 |
|---|

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

| DEFINITIONS |
|---|

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.
2. "Business" includes trade, profession or occupation.
3. "Insured" means you and residents of your household who are:
   a. Your relatives; or
   b. Other persons under the age of 21 and in the care of any person named above.
   Under Section II, "insured" also means:
   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured";
   d. With respect to any vehicle to which this policy applies:
      (1) Persons while engaged in your employ or that of any person included in 3.a. or 3.b. above; or
      (2) Other persons using the vehicle on an "insured location" with your consent.
4. "Insured location" means:
   a. The "residence premises";
   b. The part of other premises, other structures and grounds used by you as a residence; and
      (1) Which is shown in the Declarations; or
      (2) Which is acquired by you during the policy period for your use as a residence;

c. Any premises used by you in connection with a premises in 4.a. and 4.b. above;
   d. Any part of a premises:
      (1) Not owned by an "insured"; and
      (2) Where an "insured" is temporarily residing;
   e. Vacant land, other than farm land, owned by or rented to an "insured";
   f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";
   g. Individual or family cemetery plots or burial vaults of an "insured"; or
   h. Any part of a premises occasionally rented to an "insured" for other than "business" use.
5. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
   a. "Bodily injury"; or
   b. "Property damage."
6. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.
7. "Residence employee" means:
   a. An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises," including household or domestic services; or
   b. One who performs similar duties elsewhere not related to the "business" of an "insured."
8. "Residence premises" means:
   a. The one family dwelling, other structures, and grounds; or
   b. That part of any other building;
   where you reside and which is shown as the "residence premises" in the Declarations.
   "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

| SECTION I - PROPERTY COVERAGES |
|---|

## COVERAGE A - Dwelling

We cover:

1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."

This coverage does not apply to land, including land on which the dwelling is located.


## COVERAGE B - Other Structures

We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. Used in whole or in part for "business"; or
2. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

## COVERAGE C - Personal Property

We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by an "insured";
2. A guest or a "residence employee," while the property is in any residence occupied by an "insured."

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises," is 10% of the limit of liability for Coverage C, or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.
2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.
3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.
4. $1000 on trailers not used with watercraft.
5. $1000 for loss by theft of jewelry, watches,

furs, precious and semi-precious stones.
6. $2000 for loss by theft of firearms.
7. $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.
8. $2500 on property, on the "residence premises," used at any time or in any manner for any "business" purpose.
9. $250 on property, away from the "residence premises," used at any time or in any manner for any "business" purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. below.
10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:
    a. Accessories or antennas; or
    b. Tapes, wires, records, discs or other media; for use with any electronic apparatus.
11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:
    a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;
    b. Is away from the "residence premises"; and
    c. Is used at any time or in any manner for any "business" purpose.

    Electronic apparatus includes:
    a. Accessories or antennas; or
    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus.

**Property Not Covered.** We do not cover:

1. Articles separately described and specifically insured in this or other insurance;
2. Animals, birds or fish;
3. Motor vehicles or all other motorized land conveyances.

   This includes:
   a. Their equipment and accessories; or
   b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:
      (1) Accessories or antennas; or



(2) Tapes, wires, records, discs or other media;

for use with any electronic apparatus. The exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

a. Used to service an "insured's" residence; or

b. Designed for assisting the handicapped;

4. Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

6. Property in an apartment regularly rented or held for rental to others by an "insured," except as provided in Additional Coverages 10.;

7. Property rented or held for rental to others off the "residence premises";

8. "Business" data, including such data stored in:

a. Books of account, drawings or other paper records; or

b. Electronic data processing tapes, wires, records, discs or other software media;

However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

9. Credit cards or fund transfer cards except as provided in Additional Coverages 6.

## COVERAGE D - Loss Of Use

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph b. below.

a. **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

b. **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

Payment under a. or b. will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

**Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under 1. and 2. above for no more than two weeks.

The periods of time under 1., 2. and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

## ADDITIONAL COVERAGES

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

a. Your tree(s) felled by the peril of Windstorm or Hail;

b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage.


If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

This coverage:

a. Does not increase the limit of liability that applies to the covered property;

b. Does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I - CONDITION 2.d.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises," for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises," Vandalism or malicious mischief or Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

We will pay up to $500 for:

a. The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

b. Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

c. Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

d. Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

We do not cover use of a credit card or fund transfer card:

a. By a resident of your household;

b. By a person who has been entrusted with either type of card; or

c. If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured."

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

a. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

b. If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

c. We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under COVERAGE A - DWELLING, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises." We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1000 is the most we will pay with respect to any one loss, regardless of the number of assessments.



Condition 1. Policy Period, under SECTIONS I AND II CONDITIONS, does not apply to this coverage.

8. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

    a. Perils Insured Against in COVERAGE C - PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

    b. Hidden decay;

    c. Hidden insect or vermin damage;

    d. Weight of contents, equipment, animals or people;

    e. Weight of rain which collects on a roof; or

    f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

    Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.

    Collapse does not include settling, cracking, shrinking, bulging or expansion.

    This coverage does not increase the limit of liability applying to the damaged covered property.

9. **Glass or Safety Glazing Material.**

    We cover:

    a. The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

    b. Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

    This coverage does not include loss on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

    Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

    This coverage does not increase the limit of liability that applies to the damaged property.

10. **Landlord's Furnishings.** We will pay up to $2500 for your appliances, carpeting and other household furnishings, in an apartment on the "residence premises" regularly rented or held for rental to others by an "insured," for loss caused only by the following Perils Insured Against:

    a. **Fire or lightning.**

    b. **Windstorm or hail.**

       This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

       This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

    c. **Explosion.**

    d. **Riot or civil commotion.**

    e. **Aircraft,** including self-propelled missiles and spacecraft.

    f. **Vehicles.**

    g. **Smoke,** meaning sudden and accidental damage from smoke.

       This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

    h. **Vandalism or malicious mischief.**

    i. **Falling objects.**

       This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a failing object. Damage to the falling object itself is not included.

    j. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

    k. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

       This peril does not include loss:

       (1) To the system or appliance from which the water or steam escaped;

       (2) Caused by or resulting from freezing except as provided in the peril of freezing below; or

       (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

       In this peril, a plumbing system does not include a sump, sump pump or related equipment.

    l. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

       We do not cover loss caused by or resulting from freezing under this peril.



m. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain the system and appliances of water.

n. **Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

o. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

The $2500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

## SECTION I - PERILS INSURED AGAINST

## COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

1. Involving collapse, other than as provided in Additional Coverage 8.;

2. Caused by:

a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain the system and appliances of water;

b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(1) Fence, pavement, patio or swimming pool;

(2) Foundation, retaining wall, or bulkhead; or

(3) Pier, wharf or dock;

c. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

d. Vandalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

e. Any of the following:

(1) Wear and tear, marring, deterioration;

(2) Inherent vice, latent defect, mechanical breakdown;

(3) Smog, rust or other corrosion, mold, wet or dry rot;

(4) Smoke from agricultural smudging or industrial operations;

(5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

(6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;

(7) Birds, vermin, rodents, or insects; or

(8) Animals owned or kept by an "insured."

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

3. Excluded under Section I - Exclusions.

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

## COVERAGE C - PERSONAL PROPERTY

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I - EXCLUSIONS.

1. **Fire or lightning.**

2. **Windstorm or hail.**

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow,



sleet, sand or dust enters through this opening. This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

3. **Explosion.**
4. **Riot or civil commotion.**
5. **Aircraft,** including self-propelled missiles and spacecraft.
6. **Vehicles.**
7. **Smoke,** meaning sudden and accidental damage from smoke.
   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.
8. **Vandalism or malicious mischief.**
9. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.
   This peril does not include loss caused by theft:
   a. Committed by an "insured";
   b. In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or
   c. From that part of a "residence premises" rented by an "insured" to other than an "insured."
      This peril does not include loss caused by theft that occurs off the "residence premises" of:
   a. Property while at any other residence owned by, rented to, or occupied by an "insured" except while an "insured" is temporarily living there. Property of a student who is an "insured" is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;
   b. Watercraft, and their furnishings, equipment and outboard engines or motors; or
   c. Trailers and campers.
10. **Falling objects.**
    This peril does not include loss to property

contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.
11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.
12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.
    This peril does not include loss:
    a. To the system or appliance from which the water or steam escaped;
    b. Caused by or resulting from freezing except as provided in the peril of freezing below; or
    c. On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."
    In this peril, a plumbing system does not include a sump, sump pump or related equipment.
13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.
    We do not cover loss caused by or resulting from freezing under this peril.
14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.
    This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:
    a. Maintain heat in the building; or
    b. Shut off the water supply and drain the system and appliances of water.
15. **Sudden and accidental damage from artificially generated electrical current.**
    This peril does not include loss to a tube, transistor or similar electronic component.
16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

## SECTION I - EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

   a. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

   b. **Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:
      (1) Fire;
      (2) Explosion; or
      (3) Breakage of glass or safety glazing material which is part of a building, storm door or storm window;


ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

c. **Water Damage,** meaning:
   (1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
   (2) Water which backs up through sewers or drains or which overflows from a sump; or
   (3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

   Direct loss by fire, explosion or theft resulting from water damage is covered.

d. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises." But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

e. **Neglect,** meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

f. **War,** including the following and any consequence of any of the following:
   (1) Undeclared war, civil war, insurrection, rebellion or revolution;
   (2) Warlike act by a military force or military personnel; or
   (3) Destruction, seizure or use for a military purpose.

   Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of SECTION I - CONDITIONS.

h. **Intentional Loss,** meaning any loss arising out of any act committed:
   (1) By or at the direction of an "insured"; and
   (2) With the intent to cause a loss.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.
   a. **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;
   b. **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;
   c. **Faulty, inadequate or defective:**
      (1) Planning, zoning, development, surveying, siting;
      (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
      (3) Materials used in repair, construction, renovation or remodeling; or
      (4) Maintenance;
      of part or all of any property whether on or off the "residence premises."

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:
   a. To the "insured" for more than the amount of the "insured's" interest at the time of loss; or
   b. For more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:
   a. Give prompt notice to us or our agent;
   b. Notify the police in case of loss by theft;
   c. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;
   d. Protect the property from further damage. If repairs to the property are required, you must:
      (1) Make reasonable and necessary repairs to protect the property; and
      (2) Keep an accurate record of repair expenses;
   e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;
   f. As often as we reasonably require:
      (1) Show the damaged property;
      (2) Provide us with records and documents we request and permit us to make copies; and
      (3) Submit to examination under oath, while not in the presence of any other "insured," and sign the same;
   g. Send to us, within 60 days after our request, your signed, sworn proof of loss



which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the "insured" and all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimates;

(6) The inventory of damaged personal property described in 2.e. above;

(7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

**3. Loss Settlement.** Covered property losses are settled as follows:

a. Property of the following types:

(1) Personal property;

(2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

(3) Structures that are not buildings;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

(1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) The limit of liability under this policy that applies to the building;

(b) The replacement cost of that part of the building damaged for like construction and use on the same premises; or

(c) The necessary amount actually spent to repair or replace the damaged building.

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(a) The actual cash value of that part of the building damaged; or

(b) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(a) Excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

(b) Those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(c) Underground flues, pipes, wiring and drains.

(4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of b.(1) and b.(2) above.

However, if the cost to repair or replace the damage is both:

(a) Less than 5% of the amount of insurance in this policy on the building; and

(b) Less than $2500;

we will settle the loss according to the provisions of b.(1) and b.(2) above whether or not actual repair or replacement is complete.

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim



within 180 days after loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:
   a. Repair or replace any part to restore the pair or set to its value before the loss; or
   b. Pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
   Each party will:
   a. Pay its own appraiser; and
   b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. Reach an agreement with you;
    b. There is an entry of a final judgement; or
    c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an "insured."

12. **Mortgage Clause.**
    The word "mortgagee" includes trustee.
    If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.
    If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:
    a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;
    b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and
    c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.
    If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.
    If we pay the mortgagee for any loss and deny payment to you:
    a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or
    b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.
    Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**
    a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.


b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**15. Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**16. Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

## SECTION II - LIABILITY COVERAGES

### COVERAGE E - Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

### COVERAGE F - Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees." As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location," if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured."

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to "bodily injury" or "property damage":

   a. Which is expected or intended by the "insured";

   b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

   c. Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location":

   (1) On an occasional basis if used only as a residence;

   (2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

   (3) In part, as an office, school, studio or private garage;

   d. Arising out of the rendering of or failure to render professional services;

   e. Arising out of a premises:

   (1) Owned by an "insured";

   (2) Rented to an "insured"; or

   (3) Rented to others by an "insured";

   that is not an "insured location";

   f. Arising out of:

   (1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";



(2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

This exclusion does not apply to:

(1) A trailer not towed by or carried on a motorized land conveyance.

(2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

(a) Not owned by an "insured"; or

(b) Owned by an "insured" and on an "insured location";

(3) A motorized golf cart when used to play golf on a golf course;

(4) A vehicle or conveyance not subject to motor vehicle registration which is:

(a) Used to service an "insured's" residence;

(b) Designed for assisting the handicapped; or

(c) In dead storage on an "insured location";

g. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

(2) The entrustment by an "insured" of an excluded watercraft described below to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an "insured." This exclusion does not apply to watercraft:

(1) That are not sailing vessels and are powered by:

(a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";

(b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an "insured";

(c) One or more outboard engines or motors with 25 total horsepower or less;

(d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an "insured";

(e) Outboard engines or motors of more than 25 total horsepower owned by an "insured" if:

(i) You acquire them prior to the policy period; and

(a) You declare them at policy inception; or

(b) Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.

(ii) You acquire them during the policy period.

This coverage applies for the policy period.

(2) That are sailing vessels, with or without auxiliary power:

(a) Less than 26 feet in overall length;

(b) 26 feet or more in overall length, not owned by or rented to an "insured."

(3) That are stored;

h. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an aircraft;

(2) The entrustment by an "insured" of an aircraft to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

i. Caused directly or indirectly by war, including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

j. Which arises out of the transmission of a communicable disease by an "insured";

k. Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

l. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as


defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions e., f., g., and h. do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employees" employment by an "insured."

2. **Coverage E - Personal Liability,** does not apply to:

   a. Liability:

      (1) For any loss assessment charged against you as a member of an association, corporation or community of property owners;

      (2) Under any contract or agreement. However, this exclusion does not apply to written contracts:

         (a) That directly relate to the ownership, maintenance or use of an "insured location"; or

         (b) Where the liability of others is assumed by the "insured" prior to an "occurrence";

         unless excluded in (1) above or elsewhere in this policy;

   b. "Property damage" to property owned by the "insured";

   c. "Property damage" to property rented to, occupied or used by or in the care of the "insured." This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

   d. "Bodily injury" to any person eligible to receive any benefits:

      (1) Voluntarily provided; or

      (2) Required to be provided;

      by the "insured" under any:

      (1) Workers' compensation law;

      (2) Non-occupational disability law; or

      (3) Occupational disease law;

   e. "Bodily injury" or "property damage" for which an "insured" under this policy:

      (1) Is also an insured under a nuclear energy liability policy; or

      (2) Would be an insured under that policy but for the exhaustion of its limit of liability.

      A nuclear energy liability policy is one issued by:

      (1) American Nuclear Insurers;

      (2) Mutual Atomic Energy Liability Under-writers;

      (3) Nuclear Insurance Association of Canada;

      or any of their successors; or

   f. "Bodily injury" to you or an "insured" within the meaning of part a. or b. of "insured" as defined.

3. **Coverage F - Medical Payments to Others,** does not apply to "bodily injury":

   a. To a "residence employee" if the "bodily injury":

      (1) Occurs off the "insured location"; and

      (2) Does not arise out of or in the course of the "residence employee's" employment by an "insured";

   b. To any person eligible to receive benefits:

      (1) Voluntarily provided; or

      (2) Required to be provided;

      under any:

      (1) Workers' compensation law;

      (2) Non-occupational disability law; or

      (3) Occupational disease law;

   c. From any:

      (1) Nuclear reaction;

      (2) Nuclear radiation; or

      (3) Radioactive contamination;

      all whether controlled or uncontrolled or however caused; or

      (4) Any consequence of any of these; or

   d. To any person, other than a "residence employee" of an "insured," regularly residing on any part of the "insured location."

---

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. Expenses we incur and costs taxed against an "insured" in any suit we defend;

   b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

   c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit; and

   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.



2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to you or any other "insured."

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $500 per "occurrence" for "property damage" to property of others caused by an "insured."

   We will not pay for "property damage":
   a. To the extent of any amount recoverable under Section I of this policy;
   b. Caused intentionally by an "insured" who is 13 years of age or older;
   c. To property owned by an "insured";
   d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or
   e. Arising out of:
   (1) A "business" engaged in by an "insured";
   (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured," other than the "insured location"; or
   (3) The ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

   This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an "insured."

4. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

a. "Bodily injury" or "property damage" not excluded under Section II of this policy; or
b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:
   (1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and
   (2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of:

a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or
b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1. Section II - Coverage E - Personal Liability Exclusion 2.a.(1);
2. Condition 1. Policy Period, under SECTIONS I AND II - CONDITIONS.

## SECTION II - CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of "insureds," claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

   Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured." This condition will not increase our limit of liability for any one "occurrence."

3. **Duties After Loss.** In case of an accident or "occurrence," the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:
   a. Give written notice to us or our agent as soon as is practical, which sets forth:
   (1) The identity of the policy and "insured";
   (2) Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and
   (3) Names and addresses of any claimants and witnesses;
   b. Promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence";


c. At our request, help us:
   (1) To make settlement;
   (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";
   (3) With the conduct of suits and attend hearings and trials; and
   (4) To secure and give evidence and obtain the attendance of witnesses;
d. Under the coverage - Damage to Property of Others - submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;
e. The "insured" will not, except at the "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury."

**4. Duties of an Injured Person - Coverage F - Medical Payments to Others.**

The injured person or someone acting for the injured person will:
a. Give us written proof of claim, under oath if required, as soon as is practical; and

b. Authorize us to obtain copies of medical reports and records.

The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**5. Payment of Claim - Coverage F - Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

**6. Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

No one will have the right to join us as a party to any action against an "insured." Also, no action with respect to Coverage E can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

**7. Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**8. Other Insurance - Coverage E - Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

---

## SECTIONS I AND II - CONDITIONS

**1. Policy Period.** This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

**2. Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, an "insured" has:
a. Intentionally concealed or misrepresented any material fact or circumstance;
b. Engaged in fraudulent conduct; or
c. Made false statements;
relating to this insurance.

**3. Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

**4. Waiver or Change of Policy Provisions.**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**5. Cancellation.**
a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.
b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.
   (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.
   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.
   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:
      (a) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or



(b) If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

8. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b. "Insured" includes:

(1) Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

---

## *MUTUAL POLICY CONDITIONS

You are a member of the Liberty Mutual Fire Insurance Company while this policy is in force. Membership entitles you to vote in person or by proxy at meetings of the company. The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors.

This policy is classified in Dividend Class II.

This policy has been signed by our President and Secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

**SECRETARY**

**PRESIDENT**



# HOMEPROTECTOR PLUS ENDORSEMENT

**A. INCREASED SPECIAL LIMIT OF LIABILITY - JEWELRY, WATCHES, FURS, PRECIOUS AND SEMI-PRECIOUS STONES**

Section I, Coverage C - Personal Property. Special Limits of Liability. Paragraph 5 is replaced with:

5. Jewelry, watches, furs, precious and semi-precious stones are insured for accidental direct physical loss or damage. The following exclusions and limitations apply:

   a. $2500 for loss by theft, subject to a maximum of $1000 for any one article.

   b. The limit of liability stated in the declarations page for Coverage C, for loss caused by perils named under Coverage C of this policy, other than theft.

   c. $2500 for loss caused by perils not named and not excluded in this policy, subject to a maximum of $1000 for any article.

   d. We do not cover loss or damage caused by mechanical breakdown, wear and tear, gradual deterioration, insects, vermin or inherent vice.

**B. REPLACEMENT COST PROVISION - DWELLING AND PERSONAL PROPERTY**

You must meet the following additional Section I Condition for this provision to apply:

17. Additions or Changes to Dwelling - Notice to Company. You must inform us within 90 days of the start of any additions, alterations or improvements to the dwelling that will increase the replacement cost of the dwelling by $5,000 or more.

If you meet Condition 17, then Section I, Condition 3. Loss Settlement, is deleted and replaced by the following:

3. Loss Settlement. Covered property losses are settled as follows:

   a. The applicable limit of liability for Buildings under Coverage A or B is the replacement cost, after application of deductible and without deduction for depreciation, subject to the following:

   (1) We will pay the cost of repair or replacement, but not exceeding:

   (a) The replacement cost of that part of the building damaged using like construction on the same premises and intended for the same occupancy and use;

   (b) With respect to Coverage A, an amount not exceeding 20% greater than the limit of liability stated in the declaration, as modified by the Inflation Protection Provision of the policy;

   (c) With respect to Coverage B, the limit of liability stated in the declaration, as modified by the Inflation Protection Provision of the policy;

   (d) The amount actually and necessarily spent to repair or replace the damage.

   (2) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of a.(1) above.

   However, if the cost to repair or replace the damage is both:

   (a) Less than 5% of the amount of insurance in this policy on the building;

   and

   (b) Less than $2500;

   We will settle the loss according to the provisions of a.(1) above whether or not actual repair or replacement is complete.

   b. Awnings, outdoor antennas and outdoor equipment, whether or not attached to buildings, and structures that are not buildings; at actual cash value at the time of loss but not exceeding the amount needed to repair or replace.



c. Personal property, carpeting and household appliances: at replacement cost but not exceeding the amount needed to repair or replace subject to the following:

    (1) Our limit of liability for loss to Personal Property shall not exceed the smallest of the following:

        (a) Replacement cost with a similar item of like kind and quality at the time of loss;

        (b) The full cost of repair;

        (c) Any special limit of liability described in the policy or stated in this endorsement;  or

        (d) The Coverage C limit of liability stated in the declarations, as modified by the Inflation Protection of the policy.

    (2) This endorsement shall not apply to:

        (a) Fine arts and items which, by their nature cannot be replaced with new items;

        (b) Articles whose age or history contribute substantially to their value including souvenirs or collector's items.

        (c) Property that is unusable for the purpose for which it was originally intended due to age or historic condition.

    (3) We will not pay for any loss to personal property under this endorsement until actual repair or replacement is complete.

d. You may disregard the replacement cost provision and make a claim for loss of or damage to property on an actual cash value basis and then make claim within 180 days after loss for additional liability under this endorsement.

## C.  INCREASED LIMIT - COVERAGE D

We will pay the amount of loss covered by Coverage D which is actually sustained by you during the 12 consecutive months following the date of loss, subject to the periods of time under paragraphs 1, 2 and 3 of Coverage D - Loss of Use.

## D.  ADDITIONAL COVERAGES

REFRIGERATORS AND FREEZERS CONTENTS COVERAGE

We cover the contents of deep freeze or refrigerated units on the residence premises from the perils of:

1. Fluctuation or total interruption of electric power, either on or off premises, resulting from conditions beyond the control of the "insured".

2. Mechanical breakdown of any refrigeration equipment on premises including the blowing of fuses or circuit breakers.

We do not cover loss caused by the following additional exclusions:

1. Disconnection or termination of power due to turning off any switch.

2. Inability of power source to provide sufficient power due to government order, lack of fuel or lack of generating capacity to meet demand.

SPECIAL LIMIT - We will not pay more than $500 of your loss of refrigerator or freezer contents resulting from the above perils.

All other provisions of this policy apply.

LOCK REPLACEMENT COVERAGE

We will pay up to $250 for replacing the locks or cylinders on the exterior doors of the residence premises when your keys have been stolen.  The theft of the keys must be reported to the police for this coverage to apply.

This coverage is additional insurance.  No deductible applies to this coverage.



**BACK UP OF SEWER AND SUMP PUMP OVERFLOW COVERAGE ENDORSEMENT**

**(This is not Flood Insurance)**

This endorsement modifies such insurance as is afforded by this policy.

## DEFINITIONS

The following definition is added:

The term "flood" as used in this endorsement means a general and temporary condition of partial or complete inundation of normally dry land areas from:

1.  the unusual and rapid accumulation of runoff of surface waters from any source;

2.  the overflow of inland or tidal waters;

3.  waves, tides or tidal waves; or

4.  spray from any of these, whether or not driven by wind.

## PERILS INSURED AGAINST - SECTION I

For an additional premium, we cover risks of direct physical loss to property described in Coverage A - Dwelling and Coverage C - Personal Property described below when caused by a peril listed below, unless the loss is excluded in this policy.

1.  Sewer Back-up, meaning only direct loss to covered property caused by effluent which backs up through sewers or drains which are a part of the "residence premises".

2.  Sump Pump Overflow, meaning only direct loss to covered property caused by water which overflows or accidentally discharges from within a sump pump, sump pump well, sump pump well discharge system, or other type system designed to remove subsurface water from the foundation area of the "residence premises."

Direct physical loss caused by water which backs up through sewers or drains due to the mechanical failure of a sump pump, sump pump well, sump pump well discharge system or other type system designed to remove subsurface water from the foundation area of the "residence premises" is covered.

## PROPERTY COVERAGES - SECTION I

The coverage provided by this endorsement only applies to the dwelling described in Coverage A and the following Coverage C personal property items:

- Clothes washers and dryers
- Food freezers and the food in them
- Refrigerators
- Ranges
- Portable dishwashers
- Dehumidifiers

## EXCLUSIONS - SECTION I

With respect to the coverages provided by this endorsement only, the following exclusions under Section I -Exclusions are deleted:

**Water** which backs up through sewers or drains or which overflows from a sump pump.

**Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises." But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

## DEDUCTIBLE

Each claim for loss to covered property will be adjusted separately. A $1000 deductible applies to each covered loss under this endorsement. All other provisions of this policy apply.

## LIMIT OF LIABILITY

We will pay no more than the amount shown on the policy declarations for this coverage for any one loss caused by sewer back up or sump pump overflow as described above.



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# IDENTITY FRAUD EXPENSE COVERAGE

For an additional premium, the following Additional Coverage is added under Section I:

## IDENTITY FRAUD EXPENSE

We will pay up to $15,000 per occurrence and $30,000 per policy period for "expenses" incurred by an "insured" as the direct result of any one "identity fraud" which is both commenced and first reported while this coverage is continuously in effect.

Any act or series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one "identity fraud," even if a series of acts continues into a subsequent policy period.

## DEFINITIONS

With respect to the provisions of this endorsement only, the following definitions are added:

"Expenses" mean any of the following which are directly related to a covered identity fraud:

1. Costs for notarizing fraud affidavits or similar documents for financial institutions or similar credit grantors or credit agencies that have required that such affidavits be notarized.

2. Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors.

3. Employer documented lost wages as a result of time taken off from work to meet with, or talk to, law enforcement agencies, credit agencies and/or legal counsel, or to complete fraud affidavits, up to a maximum payment of $500 per week for a maximum period of four weeks.

4. Loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information. Such incorrect credit information must be directly related to a covered "identity fraud."

5. Reasonable attorney fees incurred, with our prior consent, for:

   a) Defense of lawsuits brought against the "insured" by merchants or their collection agencies;

   b) The removal of any criminal or civil judgments wrongly entered against an "insured"; and

   c) Challenging the accuracy or completeness of any information in a consumer credit report.

6. Charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss an actual "identity fraud."

"Identity fraud" means the act of knowingly transferring or using, without lawful authority, a means of identification of an "insured" with the intent to commit, or to aid or abet, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

## EXCLUSIONS

The following additional exclusions apply to this coverage.

We do not cover:

1. Loss arising out of "business" pursuits of any "insured."

2. "Expenses" incurred due to any fraudulent, dishonest or criminal act by any "insured" or person acting in concert with any "insured," or by any authorized representative of any "insured," whether acting alone or in collusion with others.

3. Loss other than "expenses."

## SPECIAL DEDUCTIBLE

The deductible for "identity fraud" coverage is $250. No other deductible applies to "identity fraud" coverage.

## YOUR DUTIES AFTER LOSS

The following is added under **Section I - Conditions 2. Your Duties After Loss,** paragraph  **g.**

(9) Receipts, bills or other records that support your claim for "expenses" under "identity fraud" coverage.

All other provisions of this policy apply.

**LIMIT OF LIABILITY:**$ _____ **SEE DECLARATION** _____

For an additional premium, coverage applies to your computer as stated in this endorsement.

**DEFINITIONS**

**In addition to the definitions contained in the policy, certain other words are defined as follows:**

1. **"Computer"** means a programmable electronic device that can store, retrieve and process data.

2. **"Peripheral device"** means any physical unit used to operate the **computer**, that cannot be used for purposes other than as part of the **computer** system, such as tape or disc drives or printers.

3. **"Software"** means information that is stored on a storage device such as a magnetic tape or disc, for use on a **computer**, and which has been purchased from another person.

4. **"Media"** means the storage device upon which software is stored, such as blank cassette tapes or discs used solely with the **computer** or **peripheral device**.

**PROPERTY COVERED**

We cover:

1. Your owned or leased but not borrowed **computer**;

2. Your owned or leased but not borrowed **peripheral devices**;

3. Your owned or leased but not borrowed **software**; and

4. Your owned or leased but not borrowed **media**.

**BUSINESS USE**

We will cover your owned or leased but not borrowed property whether it is used for business or personal purposes. This includes business property pertaining to a business actually conducted on the residence premises and business property away from the residence premises.

**PERILS INSURED AGAINST AND EXCLUSIONS**

We insure for all risks of physical loss to the property described under this endorse-ment except loss caused by:

1. Wear and tear, gradual deterioration, depreciation, insects, vermin, corrosion, rust, mold, dampness, dryness, cold or heat;

2. Mechanical breakdown, faulty construction, an original defect in the property, error, omission or deficiency in design, specifications, workmanship or materials;

3. Neglect, meaning neglect of the **insured** to use all reasonable means to save and preserve the property at and after the time of a loss, or when property is endangered by a Peril Insured Against

4. Intentional loss, meaning any loss arising out of any act committed:

   a. by or at the direction of the **insured**; and

   b. with the intent to cause a loss.

This exclusion number 4 does not apply to an **insured** not participating in the intentional loss.

5. Dishonest, fraudulent or criminal acts committed at any time by you, a business partner, an employee, a member of your family, or anyone else with an interest in the property or their employees or agents, whether or not occurring during the hours of employment. Nor do we insure against dishonest acts by anyone entrusted with the property.

6. Indirect or consequential loss to the property.

7. War, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

8. Water Damage, meaning:

   a. flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by the wind;

   b. water which backs up through sewers or drains; or

   c. water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalks, driveway, foundation, swimming pool or other structure.

Direct loss by fire, explosion or theft resulting from water damage is covered.

9. Nuclear Hazard

   a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

   b. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or, otherwise included within the Perils Insured Against.

   c. This policy does not apply to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

10. Any change or variation in electric power supply if the change or variation originates outside the residence premises.

11. Short circuit or blowout of other electric apparatus.

12. Magnetic injury, disturbance, or erasure of electronic data.

13. An error in programming that results in an interruption or loss of use or business.

**LIMIT OF LIABILITY**   Our limit of liability for loss under this endorsement will be the lesser of:

1. The cost of new property of similar make, type, quality, capacity and size; or

2. The reasonable cost of repair with parts of like kind and quality; or

3. The limit of liability as shown.

We reserve the right to repair or replace the damaged property or to pay for this loss in money.

**DEDUCTIBLE**   We will pay only that part of your loss under this endorsement that exceeds $50. No other deductible applies to this coverage.

All other provisions of this policy apply.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY COVERAGE
**Increased Limit**

For an additional premium, the limit of liability for Additional Coverage **6.**, Credit Card, Fund Transfer Card, Forgery and Counterfeit Money, is increased to $ _____*.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

          Copyright, Insurance Services Office, Inc.,  1990



## PREMISES ALARM OR
## FIRE PROTECTION SYSTEM

For a premium credit, we acknowledge the installation of an alarm system or automatic sprinkler system approved by us on the "residence premises."  You agree to maintain this system in working order and to let us know promptly of any change made to the system or if it is removed.

     Copyright, Insurance Services Office, Inc., 1990



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SPECIAL PROVISIONS - PENNSYLVANIA

Throughout this policy, the following is added to any provision which uses the term actual cash value:

Actual cash value is calculated as the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of covered property regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

### SECTION I - PROPERTY COVERAGES
### COVERAGE C - PERSONAL PROPERTY
### SPECIAL LIMITS OF LIABILITY

Items **10.** and **11.** are deleted and replaced by the following (these are Items **7.** and **8.** in Form **HO 00 08**):

10. $1,000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

   a. Accessories or antennas; or
   b. Tapes, wires, records, discs or other media;

   for use with any electronic apparatus described in this Item **10.**

11. $1,000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

   a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;
   b. Is away from the "residence premises"; and
   c. Is used at any time or in any manner for any "business" purpose.

   Electronic apparatus includes:

   a. Accessories and antennas; or
   b. Tapes, wires, records, discs or other media;

   for use with any electronic apparatus described in this Item **11.**

In the event Landlord Endorsement FMHO 3307 is part of this policy, the above coverages contained in Special Limits of Liability 10 and 11 are deleted.

### PROPERTY NOT COVERED

Item **3.b.** is deleted and replaced by the following:

3. Motor vehicles or all other motorized land conveyances. This includes:

   b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

      (1) Accessories or antennas; or
      (2) Tapes, wires, records, discs or other media;

      for use with any electronic apparatus described in this Item **3.b.**

      The exclusion of property described in **3.a.** and **3.b.** above applies only while the property is in or upon the vehicle or conveyance.

   We do cover vehicles or conveyances not subject to motor vehicle registration which are:

   a. Used to service an "insured's" residence; or
   b. Designed for assisting the handicapped;

### COVERAGE D - LOSS OF USE

For all forms other than **HO 00 04** and **HO 00 06**, Item **1.** is deleted and replaced by the following:

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

   Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

For Forms **HO 00 04** and **HO 00 06**, Item **1.** is deleted and replaced by the following:

1. If a loss by a Peril Insured Against under this policy to covered property or the building containing the property makes the "residence premises" not fit to live in, we



cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

In the event Landlord Endorsement FMHO 3307 is part of this policy, the above coverages contained in Coverage D - Loss of Use is deleted.

**1. Debris Removal** is deleted and replaced by the following:

**1. Debris Removal**

  **a.** We will pay your reasonable expense for the removal of:

    **(1)** Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

    **(2)** Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

    This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense. (The second sentence of this paragraph does not apply to Form **HO 00 08.**)

  **b. Fallen Trees**

    **(1)** If circumstances of a loss meet those specified in **(2)** below, we will pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

      **(a)** Your tree(s) felled by the peril of Windstorm or Hail;

      **(b)** Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet (Forms **HO 00 02, HO 00 03, HO 00 04** and **HO 00 06** only); or

      **(c)** A neighbor's tree(s) felled by a Peril Insured Against under Coverage **C.**

    The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

    **(2)** Tree removal coverage as described in **b.(1)** above applies only if:

      **(a)** The tree damages a structure covered under this policy; or

      **(b)** Windstorm or Hail or Weight of Ice, Snow or Sleet causes damage to a structure covered under this policy and the Pennsylvania Governor declares the area in which the "residence premises" is located to be a disaster area as a result of such weather conditions.

**ADDITIONAL COVERAGES**

**9. Glass or Safety Glazing Material** is deleted and replaced by the following:

**9. Glass Or Safety Glazing Material**

  **a.** We cover:

    **(1)** For all forms other than **HO 00 04** and **HO 00 06,** the breakage of glass or safety glazing material which is part of a covered building, storm door or storm window, and for:

      **(a)** Form **HO 00 04,** the breakage of glass or safety glazing material which is part of a building, storm door or storm window, and covered as Building Additions And Alterations; and

      **(b)** Form **HO 00 06,** the breakage of glass or safety glazing material which is part of a building, storm door or storm window, and covered under Coverage **A;** and

    **(2)** For all forms other than **HO 00 04** and **HO 00 06,** the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a covered building, storm door or storm window, and for:

      **(a)** Form **HO 00 04,** the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a building, storm door or storm window, and covered as Building Additions And Alterations; and

      **(b)** Form **HO 00 06,** the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a building, storm door or storm window, and covered under Coverage **A;** and

    **(3)** The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.


**b.** This coverage does not include loss:

**(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

**(2)** On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in **a.(2)** above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this Additional Coverage **9.** will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

For Forms **HO 00 01** and **HO 00 08,** we will pay up to $100 for loss under this coverage.

This coverage does not increase the limit of liability that applies to the damaged property.

(This is Additional Coverage **8.** in Forms **HO 00 01** and **HO 00 08.**)

The following Additional Coverage is added to all forms except **HO 00 08.** With respect to Form **HO 00 04,** the words 'covered building' used below, refer to property covered under Additional Coverage **10.** Building Additions And Alterations.

**11. Ordinance Or Law**

**a.** You may use up to 10% of the limit of liability that applies to Coverage **A** (or for Form **HO 00 04,** you may use up to 10% of the limit of liability that applies to Building Additions And Alterations) for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

**(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

**(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

**(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

**b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

**c.** We do not cover:

**(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

**(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

(This is Additional Coverage **10.** in Forms **HO 00 01** and **HO 00 06.**)

**SECTION I - PERILS INSURED AGAINST**

Under Form **HO 00 03, Coverage A - Dwelling** and **Coverage B - Other Structures,** Item **2.e.(3)** is deleted and replaced by the following:

**(3)** Smog, rust or other corrosion, fungus, mold, wet or dry rot;

In Endorsements:

**HO 00 15,** Special Personal Property Coverage, this is Item **1.b.(4)(c)** under Section **I** - Perils Insured Against.

**HO 04 14,** Special Computer Coverage, this is Item **B.(3)(c)** under Perils Insured Against.

**HO 17 31,** Unit-Owners Coverage **C,** this is Item **3.d.(3)** under Section **I** - Perils Insured Against.

**HO 17 32,** Unit-Owners Coverage **A,** this is Item **2.e.(3)** under Perils Insured Against.



## SECTION I - EXCLUSIONS

1. **Ordinance or Law** is deleted and replaced by the following:

1. Ordinance Or Law, meaning any ordinance or law:

   a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **1.a.** in all forms other than **HO 00 03,** and **1.a.(1)** in the Form **HO 00 03,** does not apply to the amount of coverage that may be provided for under Additional Coverages, Glass Or Safety Glazing Material or Ordinance Or Law;

   b. The requirements of which result in a loss in value to property; or

   c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.
   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
   This exclusion applies whether or not the property has been physically damaged.
   (This is Exclusion **1.a.** in Form **HO 00 03**.)

2. **Earth Movement** is deleted and replaced by the following:

2. Earth Movement, meaning earthquake, including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:
   a. Fire; or
   b. Explosion;
   ensues and then we will pay only for the ensuing loss.
   This exclusion does not apply to loss by theft.
   (This is Exclusion **1.b.** in Form **HO 00 03**.)

4. **Power Failure** is deleted and replaced by the following:

4. Power Failure, meaning the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure of power or other utility service results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss or damage caused by that Peril Insured Against.
   (This is Exclusion **1.d.** in Form **HO 00 03**.)

**Intentional Loss is deleted and replaced by the following:**

### Intentional Loss

a. Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

b. However, this exclusion will not apply to deny coverage to the "insured" who did not cooperate in or contribute to the creation of the loss if the loss:

1. Is otherwise covered property under Coverage **A, B** or **C** of the policy: and

2. Arises out of abuse to that innocent "Insured" by another "insured".

With respect to this provision, abuse means:

   (a) Abuse as defined in the Pennsylvania Protection From Abuse Act; or

   (b) Attempting to cause or intentionally, knowingly or recklessly causing damage to covered property so as to intimidate or attempt to control the behavior of another person.

If we pay a claim under this provision **8.b.,** our payment to the "insured" is limited to that "insured's" insurable interest in the property. In no event will we pay more than the Limit of Liability.

(This is Exclusion **h.** in Form **HO 00 03**.)

## SECTION I - CONDITIONS

Under **3. Loss Settlement** in Forms **HO 00 02** and **HO 00 03,** Item **b.(1)** is deleted and replaced by the following:

b. Buildings under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

   (1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:



(a) The limit of liability under this policy that applies to the building;

(b) The replacement cost of that part of the building damaged; or

(c) The necessary amount actually spent to repair or replace the damaged building.

The replacement cost will not exceed that necessary for like construction and use on the same premises; regardless of whether the replacement building or repaired building is located on the same or a different premises.

3. Loss Settlement

Under Form **HO 00 06,** Item **b.(2)** is deleted and replaced by the following:

(2) If the damage is not repaired or replaced within a reasonable time, at actual cash value but not more than the amount required to repair or replace.

9. **Our Option** is deleted and replaced by the following:

9. **Our Option**

We may repair or replace any part of the damaged property with like property if we give you written notice of our intention to do so within 15 working days after we receive your signed, sworn proof of loss.

## SECTION II - LIABILITY COVERAGES

Item **1. Coverage E - Personal Liability** is deleted and replaced by the following:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable; and

Under Coverage **F** - Medical Payments To Others:

Medical expenses do not include expenses for funeral services.

## SECTION II - EXCLUSIONS

Under **1. Coverage E - Personal Liability** and **Coverage F - Medical Payments To Others,** Item **a.** is deleted and replaced by the following:

a. Which is expected or intended by one or more "insureds";

## SECTION II - ADDITIONAL COVERAGES

Under **1. Claim Expenses,** the following paragraph is added:

e. Prejudgment interest awarded against the "insured" on that part of the judgment we pay. Any prejudgment interest awarded against the "insured" is subject to the applicable Pennsylvania Rules of Civil Procedure.

## SECTIONS I AND II - CONDITIONS

2. **Concealment Or Fraud** is deleted and replaced by the following:

2. **Concealment Or Fraud**

a. Under Section **I** - Property Coverages, with respect to all "insureds" covered under this policy, we provide no coverage for loss under Section **I** - Property Coverages if, whether before or after a loss, one or more "insureds" have:

(1) Intentionally concealed or misrepresented any material fact or circumstance;

(2) Engaged in fraudulent conduct; or

(3) Made false statements;

relating to this insurance.

b. Under Section **II** - Liability Coverages, we do not provide coverage to one or more "insureds" who, whether before or after a loss, have:

(1) Intentionally concealed or misrepresented any material fact or circumstance;

(2) Engaged in fraudulent conduct; or

(3) Made false statements;

relating to this insurance.

5. **Cancellation**

Paragraph **b.** is deleted and replaced by the following:

b. We may cancel this policy only for the reasons stated below by notifying the "insured" in writing of the date cancellation takes effect. This cancellation notice may be delivered to or mailed to the "insured" named in the Declarations at the mailing address shown in the policy or at a forwarding address.

Proof of mailing will be sufficient proof of notice.

(1) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying the "insured" named in the Declarations at least 30 days before the cancellation takes effect.

(2) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons by notifying the "insured" named in the Declarations at least 30 days prior to the proposed cancellation date:



**(a)** This policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by us;

**(b)** There has been a substantial change or increase in hazard in the risk assumed by us subsequent to the date the policy was issued;

**(c)** There is a substantial increase in hazard insured against by reason of willful or negligent acts or omissions by the "insured";

**(d)** The "insured" has failed to pay the premium by the due date, whether payable to us or to our agent or under any finance or credit plan; or

**(e)** For any other reason approved by the Pennsylvania Insurance Commissioner.

This provision shall not apply if the named "insured" has demonstrated by some overt action to us or to our agent that the "insured" wishes the policy to be cancelled.

Delivery of such written notice by us to the "insured" named in the Declarations at the mailing address shown in the policy or at a forwarding address shall be equivalent to mailing.

**6. Nonrenewal** is deleted and replaced by the following:

**6. Nonrenewal**

We will not fail to renew this policy except for one of the reasons referred to in the Cancellation Provision of this endorsement. We may refuse to renew for one of the listed reasons by mailing to the "insured" named in the Declarations at the mailing address shown in the policy or at a forwarding address, written notice at least 30 days prior to the expiration date of this policy.

This provision does not apply if:

**a.** We have indicated our willingness to renew and the "insured" has failed to pay the premium by the due date; or

**b.** The named "insured" has indicated to us or our agent that the "insured" does not wish the policy to be renewed.

Delivery of such written notice by us to the "insured" named in the Declarations at the mailing address shown in the policy or at a forwarding address shall be equivalent to mailing.

**8. Subrogation**

The following is added:

If we pay an "insured" for a loss caused by an act of abuse (as defined in Section 8. Intentional Loss or Section h. Intentional Loss in Form HO 00 03), the rights of that "insured" to recover damages from the perpetrator of the abuse are transferred to us to the extent of our payment. That "insured" may not waive such rights to recover against the perpetrator of the abuse.

**9. Death**

Paragraph **b.** is deleted and the following added:

**b.** Insurance under this policy will continue as provided in **(1)** or **(2)** below, whichever is later:

**(1)** For 180 days after your death regardless of the policy period shown in the Declarations, unless your premises and property, covered under the policy at the time of your death, is sold prior to that date; or

**(2)** Until the end of the policy period shown in the Declarations, unless your premises and property, covered under the policy at the time of your death, is sold prior to that date.

Coverage during the period of time after your death is subject to all the provisions of this policy including payment of any premium due for the policy period shown in the Declarations and any extension of that period;

**c.** "Insured" includes:

**(1)** Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

**(2)** With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

All other provisions of this policy apply.

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss.  These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1.    surveys;

2.    consultation or advice; or

3.    inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1.    if the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2.    to consultation services required to be performed under a written service contract not related to a policy of insurance; or

3.    if any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

---

**Instruction to Policy Writers**

Attach the Pennsylvania Notice to all new and renewal policies and renewal certificates insuring risks located in Pennsylvania.

---

**IL 09 10/HO 291** (Ed. 01 81)

# AMENDATORY ENDORSEMENT

## THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY

*THIS ENDORSEMENT SUPERSEDES ALL OTHER ENDORSEMENTS WHICH HAVE BEEN MADE PART OF YOUR POLICY AND REFERENCE THESE SAME PROVISIONS*

## SECTION I - PROPERTY COVERAGES

### COVERAGE A - Dwelling

Item 1. is amended as follows:

We cover:

1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling, and attached wall-to-wall carpeting;

### COVERAGE C - Personal Property

The introductory paragraph of **Special Limits of Liability** is amended to read**:**

These do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply.

The following limits are added:

12. $5000 on electronic data processing system equipment and the recording or storage media or accessories used with that equipment.

13. $5000 on any one article and $10000 in the aggregate for loss by theft of any rug, carpet (excluding attached wall-to-wall carpet), tapestry, wall-hanging or other similar article.

14. $2500 in the aggregate for loss of any of the following whether or not they are part of a collection: trading cards, comic books, figurines, stamps, advertising materials, stuffed animals, dolls, sports and entertainment memorabilia, toys, games, militaria, and books.

15. $1200 for any one electrical appliance for loss by sudden and accidental damage from artificially generated electrical currents. This special limit does not apply to electronic data processing equipment or storage media.

In the event Landlord Endorsement FMHO 3307 is part of this policy, the above coverage contained in Special Limits of Liability introductory paragraph and Subparagraphs 12 through 15 are deleted.

### Property Not Covered under COVERAGE C - Personal Property

The final two subparagraphs of Item 3 (a. and b.) are replaced by the following:

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

a. Used solely to service an "insured's" residence; or

b. Designed for assisting the handicapped;

In the event Landlord Endorsement FMHO 3307 is part of this policy, the above coverage contained in The Final two Subparagraphs of Item 3 (a. and b.) is deleted.

Item 10. is added as personal property items not covered.

10. Water or steam

**ADDITIONAL COVERAGES** is revised as follows:

Item 7. **Loss Assessment** is deleted in its entirety.

The following is added to Item 8. **Collapse**.

With respect to this Additional Coverage:

(1) Collapse means the sudden and entire falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied or used for its current intended purpose.

(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

Item 10. **Landlord's Furnishings** is deleted in its entirety.

## SECTION I - PERILS INSURED AGAINST

### COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES

The following is added to item **2.b.**

(4) Footing(s)

The following are added to item **2.e.** Any of the following:

(10) Growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;

The final paragraph of Item 2. is further revised as follows:

If any of these cause sudden and accidental water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

## SECTION II - EXCLUSIONS

Item **1.a**. under **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** is amended as follows:
Which is expected or intended by the "insured", even if the resulting "bodily injury" or "property damage"

(1) is of a different kind, quality, or degree than initially expected or intended; or

(2) is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

## SECTION II - ADDITIONAL COVERAGES

Item **1.c**. under **Claims Expenses** is amended as follows:

Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit.

Item **4. Loss Assessment** is deleted in its entirety.

All other policy terms and conditions apply.



# HOMEOWNER AMENDATORY ENDORSEMENT

**THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY**

*THIS ENDORSEMENT SUPERSEDES ALL OTHER ENDORSEMENTS WHICH HAVE BEEN MADE PART OF YOUR POLICY AND REFERENCE THESE SAME PROVISIONS*

## DEFINITIONS

The introductory paragraph of **Definitions** is amended to read:

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and
  (1) the spouse of the "named insured" shown on the Declarations, if a resident of the same household; or
  (2) the partner in a civil union, registered domestic partnership, or similar union or partnership, with the "named insured" shown on the Declarations, if a resident of the same household.

  Section (2), above, only applies if the civil union, registered domestic partnership or other similar union or partnership is validly entered into under the law of any state, territory or possession of the United States of America, any territory or province of Canada, or the equivalent of a state or province in any other country.

"We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

## SECTIONS I AND II - CONDITIONS

The introductory paragraph of **9. Death.** is amended to read:

If any person named in the Declarations or the spouse, if a resident of the same household; or the partner in a civil union, registered domestic partnership or similar union or partnership, if a resident of the same household, dies:

**AMENDATORY MOLD, FUNGUS, WET ROT, DRY ROT, BACTERIA, OR VIRUS ENDORSEMENT**
**This endorsement changes your policy.  Please read it carefully.**

**DEFINITIONS**
The following definition is added:
**9.**  "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus" means any type or form of fungus, rot, virus or bacteria.  This includes mold, mildew and any mycotoxins, other microbes, spores, scents or byproducts produced or released by mold, mildew, fungus, rot, bacteria, or viruses.

**SECTION I - PROPERTY COVERAGES**
**Additional Coverages**
The following Additional Coverage is added:

**11.  Remediation of "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus" Resulting Directly From A Covered Water Loss**

We will pay up to $5,000 for the **"Remediation"** of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** resulting directly from a covered water loss.  We will pay no more than $5,000 for this coverage during the policy period, regardless of the number of water damage losses or claims submitted.

**"Remediation"** means the reasonable and necessary treatment, containment, decontamination, removal or disposal of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** as required to complete the repair or replacement of property, covered under Section I of the policy, that is damaged by a covered water loss.  **"Remediation"** includes payment for any loss of fair rental value, or reasonable increase in additional living expenses that is necessary to maintain your normal standard of living, if **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** resulting from a covered water loss makes your residence premises uninhabitable.  **"Remediation"** includes testing or investigation to detect, evaluate or measure **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"**.

This Additional Coverage does not increase the limits of liability under Section I of the policy.

**SECTION I - PERILS INSURED AGAINST**
**Coverage A - Dwelling and Coverage B - Other Structures**
Paragraph **2.e. (3)** is deleted and replaced by the following:
**(3)** Smog, rust or other corrosion;

Paragraph **2.e. (9)** is added:
**(9)** Seepage, meaning continuous or repeated seepage or leakage of water, steam or fuel over a period of weeks, months or years:
a) From a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or
b) From within or around any plumbing fixtures, including, but not limited to, shower stalls, shower baths, tub installations, sinks or other fixtures, including walls, ceilings or floors.

**SECTION I - EXCLUSIONS**
Exclusion **1.i.** is added:
**i.** Except as provided by **Additional Coverage 11.**, damage caused by **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** is excluded, even if resulting from a peril insured against under Section I.  We do not cover **"Remediation"** of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"**, even if resulting from a peril insured against under Section I, except as provided by **Additional Coverage 11.**.

**SECTION II - EXCLUSIONS**
**Coverage E - Personal Liability and Coverage F - Medical Payments to Others**
Exclusion **1.m.** is added:
**m.** Arising out of or aggravated by, in whole or in part, **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"**.



## <u>NO</u> SECTION II - LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
## <u>LIMITED</u> SECTION I - PROPERTY COVERAGES FOR HOME DAY CARE
## BUSINESS
HO 04 96 04 91

If an "insured" regularly provides home day care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business." Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business."

Therefore, with respect to a home day care enterprise which is considered to be a "business," this policy:

1. Does not provide Section II - Liability Coverages because a "business" of an "insured" is excluded under exclusion **1.b.** of Section II - Exclusions;

2. Does not provide Section I - Coverage B coverage where other structures are used in whole or in part for "business";

3. Limits coverage for property used on the "residence premises" for the home day care enterprise to $2,500, because Coverage C - Special Limits of Liability - item **8.** imposes that limit on "business" property on the "residence premises." (Item **8.** corresponds to item **5.** in Form **HO 00 08.**);

4. Limits coverage for property used away from the "residence premises" for the home day care enterprise to $250, because Coverage C - Special Limits of Liability - item **9.** imposes that limit on "business" property away from the "residence premises." Special Limit of Liability item **9.** does not apply to adaptable electronic apparatus as described in Special Limit of Liability items **10.** and **11.** (Items **9., 10.** and **11.** correspond to items **6., 7.** and **8.** respectively in Form **HO 00 08.**)

THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.



# INFLATION PROTECTION ENDORSEMENT

It is agreed that the limits of liability for:

      Coverage A, Dwelling;

      Coverage B, Structure;

      Coverage C, Personal Property;

      and Coverage D, Loss of Use,

shall be raised by the rate of increase in the latest available information on residential building cost inflation.

## METHOD

To find the limits of liability on a given date, the Index Level the Company assigns to that date will be divided by the Index Level for the effective date of this Endorsement. This Factor is then multiplied by the limit for Coverages A, B, C and D separately.

If during this policy's term the Coverage A limit is changed at the insured's request, the effective date of this Endorsement is amended to the effective date of such change.

This Endorsement shall not reduce the limits of liability to less than the amount shown on:

      a.  The policy; or

      b.  The most recent Homeowners Policy Renewal Declaration.


This Endorsement must be attached to Change Endorsement when issued after the policy is written.



# LEAD POISONING EXCLUSION ENDORSEMENT

The following provisions are added to and made part of your Homeowners Policy:

Section I - Property Coverages do not apply to any costs or expenses incurred or loss arising out of:

1. the removal, testing for, monitoring, clean-up, abatement, treatment, or neutralization of lead; paint, putty or plaster containing lead; soil or earth containing lead; or any other substance or material containing lead, or;

2. any governmental direction or other request that you test for, monitor, clean-up, remove, abate, contain, treat or neutralize lead; paint, putty or plaster containing lead; soil or earth containing lead; or any other substance or material containing lead.

Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to bodily injury or property damage:

1. arising out of lead paint, plaster or putty containing lead; soil or earth containing lead or any other material or substance containing lead, or;

2 any costs or expenses incurred or loss arising out of any claim, governmental direction, or request that you test for, monitor, clean-up, remove, abate, contain, treat or neutralize lead; paint, putty or plaster containing lead; soil or earth containing lead; or any other substance or material containing lead.

This exclusion applies to any obligation to share damages, costs or expenses with someone else or to repay someone else who must pay damages, costs or expenses.



# UNDERGROUND FUEL STORAGE TANK EXCLUSION

**The following provision is added to and made part of your Homeowners Policy:**

**Section II - Exclusions**

**The Paragraph below is added:**

**Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to "bodily injury" or "property damage":**

arising out of the release of fuel or fuel products from an "underground storage tank system."

"Underground storage tank system" means the underground tank, the fill pipe, the vent pipes, and all associated fixtures, including pipe and tubing which contains or conveys fuel or fuel products from the underground storage tank to the point of combustion.

All other provisions of this policy apply.

FMHO 1097 (Ed. 1-97) Liberty Mutual Group Page 1 of 1

# EXHIBIT B











# EXHIBIT C



# 2713 E HUNTINGDON ST ACCOUNT #
## 314166400

Assessment    Tax LOOP

## Account Information

**OWNER(S)**

BANK OF NEW YORK MELLON T

**MAILING ADDRESS**

3451 HAMMOND AVE STE 150
WATERLOO IA
50702

**PROPERTY UNIT**

None

**PROPERTY ZIP**

19125-4007

**SALE DATE**

7/23/2012

**SALE PRICE**

$93,000

**HOMESTEAD**

$0

## Property Characteristics

**LAND AREA**

1,190 SqFt

**IMPROVEMENT AREA**

1,512 SqFt

**IMPROVEMENT DESCRIPTION**

ROW 3 STY MASONRY

**BEGINNING POINT**



Topics   Businesses   Residents   Visitors   Government



# 2713 E HUNTINGDON ST PHILADELPHIA, PA

CASE NUMBER
437573

CASE GROUP
CE-HOUSING CODE ENFORCEMENT

CASE LOCATION
2713 E HUNTINGDON ST

DATE ADDED
June 18, 2014

DATE UPDATED
July 17, 2014

STATUS
OPEN

RESOLUTION DATE
N/A

PRIORITY
NON HAZARDOUS

## VIOLATIONS

| VIOLATION CODE | VIOLATION TYPE | VIOLATION DATE | STATUS | LOCATION |
|---|---|---|---|---|
| PM-302.2/1 | EXT A-CLEAN/EXTERMINATE | June 17, 2014 | Not Complied | 2713 E HUNTINGDON(REAR YARD) |
| PM-302.2/2 | EXT A-CLEAN RUBBISH/GARBAGE | June 17, 2014 | Not Complied | 2713 E HUNTINGDON(REAR YARD) |
| PM-306.0/1 | VACANT PROP STANDARD | June 17, 2014 | Not Complied | 2713 E HUNTINGDON |

Topics
Arts & Culture
Education
Employment
Environment
Health
Housing
Neighborhoods
Public Safety
Recreation
Transportation & Utilities
Urban Development

People We Serve
Businesses
Residents
Visitors

Government
Mayor's Office
City Council
Courts
District Attorney
Sheriff

Contact
311
Phone Directory
Language Assistance

Technical Problems: webissues@phila.gov | HIPAA | Privacy Policy | Right to Know Policy | Terms of use

# EXHIBIT D

 City of Philadelphia
LIFE, LIBERTY AND YOU

Topics   Businesses   Residents   Visitors   Government     

# 2713 E HUNTINGDON ST PHILADELPHIA, PA

CASE NUMBER
437573

CASE GROUP
CE-HOUSING CODE ENFORCEMENT

CASE LOCATION
2713 E HUNTINGDON ST

DATE ADDED
June 18, 2014

DATE UPDATED
July 17, 2014

STATUS
OPEN

RESOLUTION DATE
N/A

PRIORITY
NON HAZARDOUS

## VIOLATIONS

| VIOLATION CODE | VIOLATION TYPE | VIOLATION DATE | STATUS | LOCATION |
|---|---|---|---|---|
| PM-302.2/1 | EXT A-CLEAN/EXTERMINATE | June 17, 2014 | Not Complied | 2713 E HUNTINGDON(REAR YARD) |
| PM-302.2/2 | EXT A-CLEAN RUBBISH/GARBAGE | June 17, 2014 | Not Complied | 2713 E HUNTINGDON(REAR YARD) |
| PM-306.0/1 | VACANT PROP STANDARD | June 17, 2014 | Not Complied | 2713 E HUNTINGDON |

Topics
Arts & Culture
Education
Employment
Environment
Health
Housing
Neighborhoods
Public Safety
Recreation
Transportation & Utilities
Urban Development

People We Serve
Businesses
Residents
Visitors

Government
Mayor's Office
City Council
Courts
District Attorney
Sheriff

Contact
311
Phone Directory
Language Assistance

Technical Problems: webissues@phila.gov | HIPAA | Privacy Policy | Right to Know Policy | Terms of Use

City of Philadelphia
LIFE LIBERTY AND YOU

Topics　Businesses　Residents　Visitors　Government



# 2713 E HUNTINGDON ST PHILADELPHIA, PA

CASE NUMBER
372264

CASE GROUP
CE-HOUSING CODE ENFORCEMENT

CASE LOCATION
FRONT WALL AT CORNICE AND SIDE WALL ABOVE 2715 E HUNTINGDON

DATE ADDED
March 12, 2013

DATE UPDATED
April 10, 2014

STATUS
CLOSED

RESOLUTION DATE
N/A

PRIORITY
HAZARD

## VIOLATIONS

| VIOLATION CODE | VIOLATION TYPE | VIOLATION DATE | STATUS | LOCATION |
|---|---|---|---|---|
| PM-304.3/1 | EXT S-WALLS REPAIR/MAINTAIN | March 11, 2013 | Not Complied | East wall and front wall at top left side |
| PM-304.3/4 | EXT S-WALLS REPAIR CRACKS | March 11, 2013 | Not Complied | East wall and front wall at top left side |
| PM-304.3/5 | EXT S-WALLS REPAIR STUCCO | March 11, 2013 | Not Complied | East wall and front wall at top left side and the rear wall |
| PM-304.3/2 | EXT S-WALLS MAKE WEATHERTIGHT | March 12, 2013 | Not Complied | East wall and front wall at top left side. |

| Topics | People We Serve | Government | Contact |
|---|---|---|---|
| Arts & Culture | Businesses | Mayor's Office | 311 |
| Education | Residents | City Council | Phone Directory |
| Employment | Visitors | Courts | Language Assistance |
| Environment | | District Attorney | |
| Health | | Sheriff | |
| Housing | | | |
| Neighborhoods | | | |
| Public Safety | | | |
| Recreation | | | |
| Transportation & Utilities | | | |
| Urban Development | | | |

Technical Problems: webissues@phila.gov | HIPAA | Privacy Policy | Right to Know Policy | Terms of Use

City of Philadelphia
LIFE LIBERTY AND YOU

Topics  Businesses  Residents  Visitors  Government



# 2713 E HUNTINGDON ST PHILADELPHIA, PA

CASE NUMBER
400896

CASE GROUP
CE-HOUSING CODE ENFORCEMENT

CASE LOCATION
FRONT WALL AT CORNICE AND SIDE WALL ABOVE 2715 E HUNTINGDON

DATE ADDED
September 6, 2013

DATE UPDATED
September 19, 2013

STATUS
OPEN

RESOLUTION DATE
N/A

PRIORITY
HAZARD

## VIOLATIONS

| VIOLATION CODE | VIOLATION TYPE | VIOLATION DATE | STATUS | LOCATION |
|---|---|---|---|---|
| PM-304.3/1 | EXT S-WALLS REPAIR/MAINTAIN | September 19, 2013 | Not Complied | 2713 E HUNTINGDON STREET |
| PM-304.3/2 | EXT S-WALLS MAKE WEATHERTIGHT | September 19, 2013 | Not Complied | 2713 E HUNTINGDON STREET |
| PM-304.3/4 | EXT S-WALLS REPAIR CRACKS | September 19, 2013 | Not Complied | 2713 E HUNTINGDON STREET |
| PM-304.3/5 | EXT S-WALLS REPAIR STUCCO | September 19, 2013 | Not Complied | 2713 E HUNTINGDON STREET |

Topics
Arts & Culture
Education
Employment
Environment
Health
Housing
Neighborhoods
Public Safety
Recreation
Transportation & Utilities
Urban Development

People We Serve
Businesses
Residents
Visitors

Government
Mayor's Office
City Council
Courts
District Attorney
Sheriff

Contact
311
Phone Directory
Language Assistance





# 2713 E HUNTINGDON ST PHILADELPHIA, PA

CASE NUMBER
427494

CASE GROUP
CE-HOUSING CODE ENFORCEMENT

CASE LOCATION
N/A

DATE ADDED
April 22, 2014

DATE UPDATED
August 22, 2014

STATUS
SENT TO COURT

RESOLUTION DATE
N/A

PRIORITY
NON HAZARDOUS

## VIOLATIONS

| VIOLATION CODE | VIOLATION TYPE | VIOLATION DATE | STATUS | LOCATION |
|---|---|---|---|---|
| PM-304.3/1 | EXT S-WALLS REPAIR/MAINTAIN | April 21, 2014 | Not Complied | Property(East wall and front at top left side) |
| PM-304.3/2 | EXT S-WALLS MAKE WEATHERTIGHT | April 21, 2014 | Not Complied | Property(East wall and front at top left side ) |
| PM-304.3/4 | EXT S-WALLS REPAIR CRACKS | April 21, 2014 | Not Complied | Property(East wall and front at top left side) |
| PM-304.3/5 | EXT S-WALLS REPAIR STUCCO | April 21, 2014 | Not Complied | Property(East wall and front at top left side and the rear wall) |

Topics
Arts & Culture
Education
Employment
Environment
Health
Housing
Neighborhoods
Public Safety
Recreation
Transportation & Utilities
Urban Development

People We Serve
Businesses
Residents
Visitors

Government
Mayor's Office
City Council
Courts
District Attorney
Sheriff

Contact
311
Phone Directory
Language Assistance

Technical Problems: webissues@phila.gov | HIPAA | Privacy Policy | Right to Know Policy | Terms of Use



## 2713 E HUNTINGDON ST PHILADELPHIA, PA

CASE NUMBER
358168

CASE GROUP
CONTRACTUAL SERVICES UNIT

CASE LOCATION
2713 E HUNTINGDON ST

DATE ADDED
November 5, 2012

DATE UPDATED
March 12, 2013

STATUS
CLOSED

RESOLUTION DATE
March 12, 2013

PRIORITY
UNSAFE

### VIOLATIONS

| VIOLATION CODE | VIOLATION TYPE | VIOLATION DATE | STATUS | LOCATION |
| --- | --- | --- | --- | --- |
| PM-307.1/11 | WALL DETERIORATED | November 2, 2012 | Not Complied | front and side stucco |

Topics
Arts & Culture
Education
Employment
Environment
Health
Housing
Neighborhoods
Public Safety
Recreation
Transportation & Utilities
Urban Development

People We Serve
Businesses
Residents
Visitors

Government
Mayor's Office
City Council
Courts
District Attorney
Sheriff

Contact
311
Phone Directory
Language Assistance

Technical Problems: webissues@phila.gov | HIPAA | Privacy Policy | Right to Know Policy | Terms of Use

# EXHIBIT E



**THERESE ALLISON, ESQ.**
*Admitted in PA and NJ*

**SHERMAN TOPPIN LAW FIRM LLC**
**1800 JFK Boulevard, Suite 300**
**Philadelphia, PA 19103**
**Office (215) 564-3600**
**Fax (888) 521-5302**
www.shermantoppin.com

October 15, 2014

(VIA EMAIL:                                          (VIA EMAIL:
paul.englund@libertymutual.com)                     kmcdonald@blankrome.com)
Liberty Mutual Insurance Company                    Bank of New York Mellon
c/o Mr. Paul Englund                                c/o Mr. Kevin McDonald, Esq.
Senior Property Loss Specialist                     Associate Attorney
Liberty Mutual Insurance                            Blank Rome LLP
P.O. Box 1053                                       One Logan Square
Montgomeryville, PA 18936-1053                      130 North 18th Street
                                                    Philadelphia, PA 19103-6998

# DEMAND LETTER

Re:                          Potential Matter: *Stephen and Mikal Bencze vs.*
                             *Liberty Mutual Insurance Company and Bank of*
                             *New York Mellon*
Homeowner:                   Stephen and Mikal Bencze
Homeowner's Insurer:         Liberty Mutual Insurance Company
Policy Number:               H-37-288-355344-40
Property Address:            2715 E. Huntingdon Street, Philadelphia, PA 19125
Adjacent Property Owner:     Bank of New York Mellon
Adjacent Property Address:   2713 E. Huntingdon Street, Philadelphia, PA 19125
Claim/Demand Amount:         $87,900



Dear Mr. Englund and Mr. McDonald:

Please be advised that our office represents Mr. Stephen Bencze and Mrs. Mikal Bencze ("Benczes") in above-referenced matter. In the future, please forward all communications regarding this matter to my attention.

**BACKGROUND**

Stephen and Mikal Bencze (the "Benczes") are the owners of the two story, single family row home located at 2715 E. Huntingdon Street, Philadelphia, PA 19125 (the "Property"). The property located at 2713 E. Huntingdon Street, Philadelphia, PA 19125 (the "Adjoining Property") is a three story row home that is adjoining to the Property and is owned by Bank of New York Mellon ("BNYM"). The Property and the Adjoining Property share a common two story wall. The Adjoining Property has an additional 3rd floor that does not share a common wall with the Property.

Liberty Mutual Insurance Company (the "Insurer") provides homeowner's insurance to the Benczes. The homeowner's insurance policy issued by Insurer was in effect at all times for the events discussed herein.

On October 29, 2012, the stucco on the Adjoining Property's wall, which rises one floor above the Homeowner's Property, fell onto Homeowner's roof causing puncture holes in the Property roof as well as a separation of the Property's roof flashing from the Adjoining Property's adjoining wall. The Benczes contacted Insurer to notify Insurer of damage to their roof and to make a claim for insurance proceeds.

Shortly after they sustained this damage the Benczes attempted have the roof repaired. While the roofers were able to patch the holes in their roof caused by the falling stucco from the Adjoining Property, the roof could not be flashed to the Adjoining Property wall because the Adjoining Property's wall was crumbling and in complete disrepair. Without the roof flashing, which prevents water from entering into adjoining properties, rain water and other weather elements entered the Property.

At the time that the damage was sustained to the Property's roof, Mark and Lisa Butterline (the "Butterlines"), the occupants of the Adjoining Property, refused to make repairs to the wall that would permit the Benczes to repair the flashing. Further, the Butterlines refused to permit the Benczes to access or repair the Adjoining Property's damaged wall.

2



The Benczes contacted BNY Mellon, the owners of the Adjoining Property, to notify them of the state of disrepair of the 3rd floor wall and to notify them that the Butterlines refused to repair or to permit the Benczes to repair the 3rd Floor wall of the Adjoining Property.

In January of 2014, BNYM ejected the Butterlines, who were squatting in the Adjoining Property. After the ejectment BNYM failed to repair the Adjoining Property wall and failed to properly secure the Adjoining Property. After the ejectment the Butterlines entered into and flooded the Adjoining Property. The water from the flooding entered into the Property basement and caused additional damage.

For a period of almost two years the Benczes have sustained substantial water damage to their home. In addition mold developed in the Property that caused adverse reactions in the Benczes that require ongoing medical attention. Further the Mikal Bencze has suffered business losses because she has been unable to carry on her home based business, which requires specialized equipment that operates in the Property basement, as a result of the ongoing flooding in that space.

**LIABILITY OF POTENTIAL DEFENDANTS**

The parties identified in this matter, who will be named as defendants in the eventual lawsuit, are liable to the Benczes as follows:

- Liberty Mutual is liable to the Benczes for all of the damages that are insured under the homeowner's insurance policy.

- BNY Mellon is liable to the Benczes for causing damage to the Benczes' Property which resulted from its failure to repair, maintain and properly secure the Adjoining Property.



**DEMAND AMOUNT - $87,900.00**

We demand that each of you individually or jointly pay Eighty Seven Thousand Nine Hundred ($87,900) Dollars to the order of "Stephen and Mikal Bencze," within TEN (10) DAYS of receipt of this letter, to compensate them for the damages they incurred as follows:

| | |
|---|---|
| Home Repairs and Damage Reports: | $40,500.00 |
| Moving and Storage Expense and Short Term Apartment Rental | $27,000.00 |
| Medical Expenses | $400.00 |
| Home Based Business Loss | $10,000.00 |
| Attorneys' Fees (to date): | $10,000.00 |
| | _____ |
| TOTAL DEMAND: | $87,900.00 |

Please be advised that this settlement offer must be accepted within TEN (10) DAYS of receipt of this letter.  If this demand is not paid within that period of time, our office is authorized to proceed with litigation that will likely increase our client's damages significantly, and ultimately cause a tremendous increase in the amount of money needed to resolve this matter.

We look forward to hearing from you and resolving this matter as soon as possible. Thank you for your attention.

Very truly yours,

Therese Allison, Esq.

cc:    Stephen Bencze
        Mikal Bencze