IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA BUTTERLINE, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 15-1429 |
| | : | |
| THE BANK OF NEW YORK MELLON | : | |
| TRUST COMPANY, NATIONAL | : | |
| ASSOCIATION, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                **March 20, 2017**

Following the dismissal of their Amended Class Action Complaint, Plaintiffs Lisa and Mark Butterline seek leave to file a Second Amended Class Action Complaint against the Bank of New York Mellon Trust Company, N.A. (the Bank), the City of Philadelphia, and the Philadelphia Sheriff's Office,[1] to recover the "excess proceeds" generated by the sale of their home in a sheriff's foreclosure sale at which the Bank, the mortgagee of the home, was the winning bidder. According to the proposed Second Amended Complaint, the Bank's bid at the sheriff's sale exceeded the sum of its foreclosure judgment plus the costs owed on the property by more than $10,000. Although Plaintiffs are entitled to these excess proceeds under Pennsylvania law, they have not received the funds to date. The City did not collect the excess from the Bank, but instead required the Bank to pay only the costs, as is its practice when the winning bidder at a sheriff's sale is also the executing creditor.

On behalf of themselves and a class of similarly situated persons whose real property was sold at a sheriff's sale and who did not recover the excess proceeds generated by the sale, Plaintiffs seek leave to pursue constitutional claims against the City for violations of their procedural and substantive due process rights. Plaintiffs also seek leave to pursue a breach of

[1] The City and the Sheriff's Office are referred to collectively herein as "the City."

contract claim against both the City and the Bank as third-party beneficiaries of the contract created as a result of the sheriff's sale.  Finally, in a request submitted after briefing on the instant motion to amend was complete, Plaintiffs seek leave to pursue an additional claim against the City for negligent mishandling of funds.  The City opposes Plaintiffs' proposed amendment as futile, arguing the claims against the City are both legally insufficient and time-barred.  The Bank does not oppose amendment.  Because the Court agrees with the City that Plaintiffs' proposed claims against it would not withstand a motion to dismiss, Plaintiffs' motion to amend will be denied as to the City.  Plaintiffs will be granted leave to amend as to the Bank.

**FACTS**[2]

The facts alleged in Plaintiffs' proposed Second Amended Complaint are substantially the same as the facts in their first Amended Complaint.  Plaintiffs previously owned real property located at 2713 East Huntingdon Street in Philadelphia (the Property).  Plaintiffs fell behind on their mortgage payments, and in November 2007, the Bank initiated foreclosure proceedings in the Court of Common Pleas of Philadelphia County.  The Bank eventually obtained a default judgment in the amount of $62,764.79 in April 2009.

The Bank thereafter sought to execute its foreclosure judgment, causing the Property to be sold at a sheriff's sale on November 1, 2011.  After competitive bidding, the Bank purchased the Property with a winning bid of $93,000, approximately $30,000 more than the amount of its foreclosure judgment.  Following the sale, the City did not prepare and keep on file a schedule of proposed distribution of the sale proceeds, as required by Pennsylvania Rule of Civil Procedure

---

[2] Except where otherwise specifically noted, the following facts are drawn from Plaintiffs' proposed Second Amended Complaint and the exhibits thereto.

3136(a).[3]  Nor did the City comply with the terms of its own advertisements regarding the sale, which advised the public (and Plaintiffs) that, in the event of competitive bidding, the highest bidder would be required to post certain costs at the time of sale and to deposit the balance of the purchase price with the Sheriff within 30 days of the date of sale.  Instead, on July 23, 2012, the City deeded the Property to the Bank in exchange for the Bank's payment of the costs owed on the Property—e.g., the Sheriff's costs in conducting the sale, taxes, charges for water and gas, etc.—which totaled $16,291.11,[4] rather than the entire $93,000 bid amount (or the full amount by which the bid amount exceeded the Bank's foreclosure judgment).[5]  The deed was recorded on October 31, 2012.  *See* Second Am. Compl. Ex. C.

Plaintiffs allege the City has a policy of collecting only the costs owed to the City where, as here, the winning bidder is also the executing creditor, leaving any excess proceeds from the sheriff's sale—i.e., the amount by which the bid exceeds the sum of the foreclosure judgment and the costs on the property—uncollected.  In contrast, when the winning bidder is a third party, the City collects the full amount of the bid, though it does not distribute the excess proceeds to

---

[3] At the time of the sheriff's sale, Rule 3136(a) required the sheriff, "[n]ot later than thirty days after the sale of real property . . . , [to] prepare a schedule of proposed distribution of the proceeds of sale which shall be kept on file and shall be available for inspection in the sheriff's office."  The Rule has since been amended to require the filing of the schedule of proposed distribution in the prothonotary's office.

[4] Plaintiffs believe the City may not even have required the Bank to pay the full amount of the costs.  *See* Second Am. Compl. ¶ 16 (alleging, on information and belief, "the Bank only had to pay an additional $3,045 to the Sheriff's Office").  The City disputes this.  *See* City's Mot. to Dismiss With Prejudice or to Deny Leave to Amend 4 n.4 (arguing Exhibit D to Plaintiffs' proposed Second Amended Complaint "shows that the Bank paid . . . a total of $16,291.11").

[5] Under Pennsylvania Rule of Civil Procedure 3133, when real property is purchased at a sheriff's sale by an executing creditor "entitled to receive all or part of the proceeds of the sale," the creditor is entitled to have the amount of the proceeds owed to it credited against the purchase price.

the former owner unless he submits an administrative claim to the Sheriff's Office's Defendant Asset Recovery Team, known as a "DART" claim, pursuant to the sheriff's local rules.

In December 2014, after unsuccessfully moving to set aside the sheriff's sale in the Court of Common Pleas,[6] Plaintiffs filed a DART claim requesting all excess funds obtained as a result of the sale. On December 18, 2014, the City rejected the claim, stating that because the Bank, as executing creditor, "won the bid," it was required to pay only the "pending cost (i.e. Sheriff's cost, transfer taxes, water)" and Plaintiffs were thus "not due any monies from the Sheriff Sale." Second Am. Compl. Ex. E.

Plaintiffs thereafter filed this putative class action lawsuit against the City and the Bank, asserting a procedural due process claim against the City for depriving them of their interest in the excess funds generated by the sale of their property without due process of law, and a claim for breach of implied contract against the Bank, alleging the Bank breached its duty of good faith and fair dealing under the mortgage contract by failing to pay the City the full amount of the difference between its winning bid and its foreclosure judgment. Defendants each moved to dismiss Plaintiffs' claims. In response to the Bank's motion, Plaintiffs requested leave to amend their complaint to pursue a breach of contract claim against the Bank as a third-party beneficiary of the agreement between the Bank and the Sheriff. On March 31, 2016, this Court granted the motions to dismiss, but allowed Plaintiffs an opportunity to amend.[7]

---

[6] Plaintiffs moved to set aside the sheriff's sale in December 2013, in part on the basis that the $93,000 sale price was grossly inadequate in relation to the Property's $250,000 value. City's Mot. to Dismiss With Prejudice or to Deny Leave to Amend Ex. 2. According to the docket in the state court foreclosure action, Plaintiffs' motion was denied on January 8, 2014. *See Bank of N.Y. Tr. Co. v. Butterline*, Civil No. 071100509, Docket at 8 (Phila. Ct. Com. Pl.), https://fjdefile.phila.gov/efsfjd/zk_fjd_public_qry_03.zp_dktrpt_frames (last visited March 16, 2017).

[7] The Court dismissed Plaintiffs' breach of implied contract claim against the Bank with prejudice, but rejected the Bank's arguments against allowing a further amendment to permit

On April 21, 2016, Plaintiffs filed the instant motion for leave to amend their first Amended Complaint, seeking to pursue procedural and substantive due process claims against the City and a third-party beneficiary breach of contract claim against both the City and the Bank. The City opposes the amendment as futile. The Bank, however, has not opposed the amendment. On May 20, 2016, after briefing on the motion for leave to amend was completed, Plaintiffs filed a further motion to substitute a different Second Amended Complaint, adding a claim against the City for negligent mishandling of funds. The City again opposes the motion.

**DISCUSSION**

Under Federal Rule of Civil Procedure 15, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Although Rule 15 "embodies a liberal approach to pleading," *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2006), leave to amend need not be given "if it is apparent from the record that . . . the amendment would be futile," *Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted" pursuant to Federal Rule of Civil Procedure 12(b)(6), *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000), or could not "withst[an]d a motion to dismiss on the basis of the statute of limitations," *Garvin v. City of Phila.*, 354 F.3d 215, 222 (3d Cir. 2003).

To withstand dismissal under the Rule 12(b)(6) standard, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The facts pleaded must support "more than a sheer possibility that a defendant has

---

Plaintiffs to assert their third-party beneficiary breach of contract claim. Because Plaintiffs' request for leave to amend was procedurally improper, the Court directed Plaintiffs to file a motion for leave to amend. The Court also dismissed Plaintiffs' procedural due process claim against the City, but, in an abundance of caution, dismissed the claim without prejudice.

acted unlawfully"; they must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the statute of limitations is an affirmative defense that a defendant typically must plead in its answer, a limitations defense may be the basis for a Rule 12(b)(6) dismissal if the limitations bar is "apparent from the face of the complaint." *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation omitted).

### A.    Due Process Claims

Plaintiffs seek to pursue procedural and substantive due process claims against the City for depriving them of their property interest in the excess proceeds generated by the sale of their home as a result of the City's policies with respect to sheriff's sales at which the executing creditor is the winning bidder.  Specifically, Plaintiffs challenge the City's policies of (1) not collecting the full amount by which the executing creditor's winning bid exceeds the amount of its judgment and instead collecting only amounts owed to the City, Second Am. Compl. ¶¶ 26, 34, 40, 41, 49; (2) not filing a schedule of proposed distribution following a sale to an executing creditor, *id.* ¶¶ 41, 50; and (3) not distributing excess proceeds to the property owner, as required under Pennsylvania Rule of Civil Procedure 3136(d), *id.*

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).  In addressing the procedural due process claim in Plaintiffs' first Amended Complaint, this Court concluded Plaintiffs' asserted interest in the excess proceeds generated by the sheriff's sale was a constitutionally protected property interest for procedural due process purposes because Plaintiffs have a legitimate claim of entitlement to such proceeds

under state law.  *See* Mem. 7, Mar. 31, 2016, ECF No. 31.[8]  The Court nevertheless dismissed the claim, finding Plaintiffs had not plausibly alleged the City had deprived them of this interest as the Bank, not the City, holds the excess funds, and the City has not prevented Plaintiffs from seeking to recover the proceeds from the Bank.  The Court also observed that, although the City's policy of not collecting the full amount owed by an executing creditor appeared to run afoul of the procedures outlined in the Pennsylvania Rules of Civil Procedure governing sheriff's sales, allegations that the City failed to comply with these procedures were insufficient to state a procedural due process claim, as Plaintiffs do not have a property interest in those procedures.

Acknowledging the procedural due process claim in their proposed Second Amended Complaint is not materially different from the prior iteration of this claim, Plaintiffs in effect seek reconsideration of the Court's ruling, arguing that even if they are ultimately able to recover the excess proceeds from the Bank, they have nevertheless suffered—and are continuing to suffer—at least a temporary deprivation of those funds because, despite their clear entitlement to receive the funds, they still do not have them.  Plaintiffs also maintain the availability of a potential state law remedy against the Bank does not defeat their constitutional claim because such a post-deprivation remedy may satisfy due process only when the deprivation is the result of a random and unauthorized act by a government actor, not when, as here, the deprivation is the result of an established governmental policy.  The Court finds it unnecessary to address

---

[8] *See, e.g.*, *In re Evergreen Mem'l Park Ass'n*, 308 F.2d 65, 67 (3d Cir. 1962) (holding "[a] defaulting mortgagor of land in Pennsylvania . . . has the right to receive from the proceeds of the [sheriff's] sale of the mortgaged land the amount, if any, in excess of the mortgage debt"); *Calhoun v. Commercial Credit Corp.*, 30 A.2d 735, 735 & n.1 (Pa. Super. Ct. 1943) (suggesting the sheriff has an obligation to "turn over to the debtor" any sheriff's sale proceeds "not needed to satisfy the judgment creditor and costs"); *W. Sav. Fund Soc'y of Phila. v. Devlin*, 61 Pa. D. & C. 2d 702, 707 (Pa. Ct. Com. Pl. 1973) ("When the proceeds of a sale upon execution are more than sufficient to satisfy the liens upon a property sold and the costs of sale, it is the judgment debtor who is entitled to the surplus.").

Plaintiffs' arguments for reconsideration, for regardless of the merits of their due process claim, the claim is time barred.

Section 1983 claims are subject to the statute of limitations for personal injury tort claims in the state where the cause of action arose. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). In Pennsylvania, the applicable statute of limitations is two years. *Id.* Plaintiffs filed this action on March 19, 2015; hence, if it appears from the face of the proposed Second Amended Complaint that their procedural due process claim accrued more than two years prior to March 19, 2015—i.e., before March 19, 2013—the claim is time barred.

The application of a state statute of limitations to a § 1983 claim involves aspects of state and federal law. Federal law governs the accrual date of the claim. *Id.* "Under federal law, a cause of action accrues, and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon which its action is based.'" *Id.* (quoting *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998)). The federal accrual standard is objective, focusing not on "what the plaintiff actually knew but [on] what a reasonable person should have known." *Id.* Tolling of the statute of limitations, in contrast, is generally governed by state law. *See Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) ("State law, unless inconsistent with federal law, . . . governs the . . . issue of whether a limitations period should be tolled."). Of particular relevance here is Pennsylvania's discovery rule, which "tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct." *Schmidt*, 770 F.3d at 251 (quoting *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000)). A plaintiff seeking the benefit of the discovery rule must show he exercised "reasonable diligence" in discovering his injury. *Kach*, 589 F.3d at 642 (describing reasonable diligence as "those qualities of attention, knowledge, intelligence and judgment which society requires of its

8

members for the protection of their own interests and the interests of others" (quoting *Wilson v. El-Daief*, 964 A.2d 354, 363 n.6 (Pa. 2009))).   Application of the discovery rule may be determined as a matter of law "[o]nly where the facts are so clear that reasonable minds cannot differ." *Schmidt*, 770 F.3d at 251 (emphasis and citation omitted).

As noted, the property interest at stake in this case is Plaintiffs' right to receive the excess proceeds from the sheriff's sale of their home.  To the extent the City can be regarded as having deprived Plaintiffs of this property interest, the deprivation (and thus Plaintiffs' injury) would have occurred no later than when the City gave the Bank complete title to the Property without (1) requiring it to pay that portion of the purchase price representing the excess proceeds and (2) distributing those proceeds to Plaintiffs.  *See Montanez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 480 & n.4 (3d Cir. 2014) (holding the injury in a procedural due process claim occurs when the plaintiff is deprived of property without due process).  The deprivation would thus have occurred no later than July 23, 2012, when the City deeded the Property to the Bank, or, at the very latest, October 31, 2012, when the deed was recorded.  *See Butler v. Lomas & Nettleton Co.*, 862 F.2d 1015, 1019 (3d Cir. 1988) ("[T]he right to possession of the property does not pass to a Sheriff's sale purchaser until the Sheriff's deed is executed and delivered."); 8A Christine M. G. Davis, *Goodrich Amram 2d* § 3135(a):5 (2017 update) ("Execution, acknowledgement, and delivery of the sheriff's deed passes to the purchaser all title to the property that was possessed by the judgment debtor . . . .").

Based on the facts alleged in proposed Second Amended Complaint, it is apparent Plaintiffs reasonably should have known of their injury by October 31, 2012.  The Complaint describes the events by which Plaintiffs lost their home, including the entry of a foreclosure judgment against Plaintiffs in the amount of $62,764.79 in April 2009, the sheriff's sale on November 1, 2011, and the elimination of Plaintiffs' equity and ownership interest in the

Property by deed executed on July 23, 2012, and recorded on October 31, 2012.  Plaintiffs do not allege they lacked notice of any of these events.  And while the Complaint does not indicate whether Plaintiffs attended the sheriff's sale, the sale was public, and Plaintiffs reasonably should have known the outcome of the sale—that the Bank agreed to purchase the Property with a winning bid of $93,000, an amount Plaintiffs themselves characterize as "well in excess of the Bank's judgment."  Second Am. Compl. ¶ 25; *see Taylor v. Slick*, 178 F.3d 698, 703 (3d Cir. 1999) (holding the provision of notice of a rescheduled sheriff's sale by oral public announcement at the time and place originally fixed for the sale satisfied due process "[b]ecause it can be expected that the debtor, the creditor and potential bidders will attend the sale," and noting a debtor's decision not to attend the scheduled sheriff's sale of his property was "not reasonable").  Given the $30,000 disparity between the Bank's winning bid and the amount of its foreclosure judgment, Plaintiffs had ample reason to know the sale may have generated excess proceeds, and could have readily verified the existence of the excess proceeds with the Sheriff's Office, as they eventually did.  *See* Second Am. Compl. ¶ 16 & Ex. D (referring to and attaching "a printout from the Sheriff's Office listing the distributions from the sale of the Home").  Thus, by the time the sheriff's deed was recorded on October 31, 2012, Plaintiffs should have known both that excess proceeds existed and that the City had not distributed any money from the sale to them.[9]

---

[9] That the City may have failed to prepare a schedule of proposed distribution does not affect the Court's analysis.  While a schedule of proposed distribution presumably would have reflected the existence of the excess proceeds, *see Cmty. Fed. Sav. & Loan Ass'n v. Luckenbach*, 261 A.2d 327, 328 (Pa. 1970) (describing a sheriff's schedule of distribution that provided for distribution of "[b]alance of fund" generated from the sale to the mortgagors), to obtain access to the schedule of proposed distribution (had one been prepared), Plaintiffs would have had to monitor the sheriff's office on a daily basis, as the procedures in effect at the time of the sheriff's sale in this case required that the schedule be "kept on file and . . . available for inspection in the sheriff's office," Pa. R. Civ. P. 3136(a) (2011); *see* Pa. R. Civ. Pa. 3136(a) explanatory cmt. (2017) (noting that prior to the 2015 amendment, Rule 3136 required parties with an interest in a

Plaintiffs do not dispute that they reasonably could and should have known that the sheriff's sale generated excess proceeds by the time the Property was deeded to the Bank. *See* Pls.' Resp. to City's Mot. to Dismiss With Prejudice or to Deny Leave to Amend 6-7. They nevertheless maintain their procedural due process claim is timely, arguing the claim did not accrue until December 2014 because they had no notice of the City's failure to follow the legally prescribed and advertised sheriff's sale procedures until they received the City's response to their DART claim. *See id.* The Court disagrees. While Plaintiffs may not have known of the City's failure to collect the excess proceeds of the sheriff's sale until December 2014, they should have known no later than October 31, 2012, that the sheriff's sale generated excess proceeds which the City had not distributed to them. Yet, inexplicably, Plaintiffs waited over two years before seeking the funds from the City. When Plaintiffs finally requested the funds by submitting a DART claim in December 2014, the City promptly advised them that the Bank had not paid the full amount of its bid pursuant to the policy Plaintiffs now seek to challenge. Plaintiffs do not allege any reason they could not have made such an inquiry within two years after the sale of their Property became final, and there is no reason to believe an earlier inquiry would not have produced the same response from the City. Plaintiffs' more than two-year delay in seeking the excess proceeds refutes any claim that they acted with reasonable diligence and thus precludes

---

sheriff's sale to "monitor the sheriff's office on a daily basis to acquire the schedule in order to have the full ten days with which to prepare and file the exceptions"). Plaintiffs thus should have known that the City had failed to prepare the required schedule by December 1, 2011, thirty days after the sale, and could have made some inquiry of the City at that time. Moreover, the City's post-sale obligation to prepare a schedule of proposed distribution did not excuse Plaintiffs from attending the sale, where they could have learned the sale price and been alerted to the possibility that excess proceeds might exist. *Cf. Taylor*, 178 F.3d at 703 (holding it was "not reasonable" for a debtor not to attend a scheduled sheriff's sale that the debtor knew would not go forward because he had filed for bankruptcy four days earlier).

application of the discovery rule.[10]  *See Fallin v. Pa. Dep't of Transp.*, No. 16-2062, 2017 WL 117528, at *2-3 (3d Cir. Jan. 12, 2017) (holding a plaintiff's lack of reasonable diligence could be inferred at the pleading stage where, inter alia, the complaint failed to allege any reason why the steps by which the plaintiff ultimately learned of the basis for his claim could not have been taken earlier or would not have yielded the same result).  Because it is apparent from the face of Plaintiffs' proposed Second Amended Complaint that their procedural due process claim is time barred, Plaintiffs will not be granted leave to amend to assert such a claim.

In contrast to procedural due process, which "governs the manner in which the government may infringe upon an individual's life, liberty, or property," *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 662 (3d Cir. 2011), substantive due process "limits what the government may do regardless of the fairness of procedures that it employs," *id.* at 659 (citation omitted).  Where, as here, a substantive due process claim challenges executive action, the plaintiff must allege (1) a deprivation of an interest protected by substantive due process, and (2) "the government's deprivation of that protected interest shocks the conscience."[11]  *Chainey v.*

---

[10] Plaintiffs argue they had no obligation to file a DART claim more promptly because, under the Pennsylvania Disposition of Abandoned and Unclaimed Property Act (DAUPA), the excess proceeds should have been available from the City for five years from the date they "first became demandable or distributable."  *See* 72 Pa. Stat. § 1301.9(1).  That Plaintiffs' DART claim may have been timely does not render their procedural due process claim timely given Plaintiffs' failure to exercise diligence in pursuing proceeds from the sheriff's sale.

[11] A different standard applies when a legislative act is challenged.  *See Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000) (noting a legislative act "[t]ypically . . . will withstand substantive due process challenge if the government identifies a legitimate state interest that the legislature could rationally conclude was served by the statute" (internal quotation marks and citation omitted)).  Although Plaintiffs allude to this test, they primarily defend their substantive due process claim on the ground that the City's failure to collect and distribute the excess proceeds generated in foreclosure sales is sufficiently conscience-shocking under the test applicable to executive actions, *see* Pls.' Mem. in Supp. of Mot. for Leave to Amend 13, and the City agrees the executive action test applies, as Plaintiffs' injuries arise from an executive policy, not a legislative act, *see* City's Mem. in Supp. of Mot. to Dismiss With Prejudice or to Deny Leave to Amend 9-10.

*Street*, 523 F.3d 200, 219 (3d Cir. 2008); *see Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998) ("[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.").  The City argues Plaintiffs' substantive due process claim should be dismissed as time barred and because, inter alia, the property interest at issue— Plaintiffs' right to receive the excess proceeds generated in the sale of their home—is not an interest protected by substantive due process.  The Court agrees.[12]

The Third Circuit has repeatedly recognized that "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process."  *See, e.g.*, *Nicholas v. Pa. State. Univ.*, 227 F.3d 133, 140 (3d Cir. 2000) (quoting *Reich v. Beharry*, 883 F.2d 239, 243 (3d Cir. 1989)).  While "state-created property interests, including some contract rights, are entitled to protection under the procedural component of the Due Process Clause," substantive due process protection is limited to those property interests that are "'fundamental' under the United States Constitution."  *Id.* (citations omitted).  Such fundamental property interests include ownership of real property.  *Id.* at 141 (characterizing real property ownership as "a fundamental property interest dating back to the foundation of the American colonies" (quoting *Homar v. Gilbert*, 63 F. Supp. 2d 559, 601 (M.D. Pa. 1999))).  But the Third Circuit has been reluctant to expand substantive due process protection beyond cases involving real property ownership.  *See id.*  In *Reich v. Beharry*, for example, the Third Circuit held an attorney's interest in the prompt receipt of payment from a county for professional services rendered pursuant to a contract appointing him as a special prosecutor was not a property interest

---

[12] Plaintiffs' substantive due process claim is subject to the same statute of limitations analysis as the procedural due process claim and is therefore subject to dismissal as time barred for the reasons set forth above.

entitled to substantive due process protection. 883 F.2d at 244-45. In *Nicholas v. Pennsylvania State University*, moreover, the Third Circuit held tenured public employment is not a fundamental property right, noting such employment is "a wholly state-created contract right" that "bears little resemblance to other rights and property interests that have been deemed fundamental under the Constitution." 227 F.3d at 143. And more recently, in *Wrench Transportation Systems, Inc. v. Bradley*, a panel of the Third Circuit concluded personal property ownership is not a fundamental property interest for substantive due process purposes, citing the Court's observation in *Nicholas* that it had "so far limited non-legislative substantive due process review to cases involving *real property* ownership." 340 F. App'x 812, 816 (3d Cir. 2009) (quoting *Nicholas*, 227 F.3d at 141).

Although Plaintiffs' interest in the excess proceeds generated in the foreclosure sale of their home derives from their former ownership of the property, it is not an ownership interest in real property. *Cf. Cmty. Fed. Sav. & Loan Ass'n v. Luckenbach*, 261 A.2d 327, 329 (Pa. 1970) ("[O]n the date of the [sheriff's] sale, the title to the property passes to the purchaser."); *CSS Corp. v. Sheriff of Chester Cty.*, 507 A.2d 870, 872 (Pa. Super. Ct. 1986) (holding a judgment debtor's rights in real property sold at a sheriff's sale pass to the purchaser when the property is "knocked down to the highest bidder" (footnote omitted)). Plaintiffs offer no argument that their interest in the excess proceeds is a fundamental property interest and cite no authority that would support such a conclusion. And while Plaintiffs' right to receive the excess proceeds is not a contract right, it is at least somewhat analogous to the contractual right to payment that was found not to be a fundamental property interest in *Reich*. Because Plaintiffs' substantive due process claim does not implicate a fundamental property interest, the claim would be subject to

14

dismissal under Rule 12(b)(6).[13]  Plaintiffs' motion for leave to assert such a claim will therefore be denied as futile.  Plaintiffs' motion will also be denied as to their request for leave to pursue a claim for a declaratory judgment against the City, as the declaratory judgment claim is based entirely on the alleged due process violations.

### B.       Breach of Contract Claims

Plaintiffs also seek to pursue a breach of contract claim against both the City and the Bank as third party beneficiaries of the contract of sale that arose when the City accepted the Bank's bid at the sheriff's sale.  Plaintiffs previously sought leave to assert a third party beneficiary breach of contract claim against the Bank in their opposition to the Bank's motion to dismiss Plaintiffs' prior complaint.  The Bank opposed the request, in part on the basis that the sheriff's sale did not create a contract between the City and the Bank, but the Court rejected this argument, noting there is case law that supports the existence of such a contract under Pennsylvania law.[14]  Unpersuaded based on the papers then before the Court that Plaintiffs'

---

[13] Plaintiffs cite three district court decisions in support of their contention that the City's conduct is sufficiently egregious and outrageous to shock the contemporary conscience, but none of these cases supports the proposition that Plaintiffs' interest in the excess proceeds of the foreclosure sale is a fundamental property interest protected by substantive due process.  The property interest at issue in *Beard v. Borough of Duncansville* was the plaintiffs' ownership interest in real property the defendant governmental entity was trying to condemn for an easement.  652 F. Supp. 2d 611, 623 (W.D. Pa. 2009).  The plaintiff in *Swinka Realty Investments, LLC v. Lackawanna County Tax Claim Bureau* claimed to have an ownership interest in real property it had purchased at an upset tax sale, but which a third party allegedly had been permitted to redeem after the tax sale.  No. 13-764, 2013 WL 5656615, at *1 (E.D. Pa. Oct. 15, 2013).  And the substantive due process violation at issue in *Hamilton v. Spriggle* was predicated on a deprivation of a liberty interest, not a property interest.  965 F. Supp. 2d 550, 581 (M.D. Pa. 2013).

[14] *See, e.g.*, *Pa. Co. for Ins. on Lives & Granting Annuities ex rel. Jefferson Med. Coll. of Phila. v. Broad St. Hosp.*, 47 A.2d 281, 283 (Pa. 1946) (holding when the sheriff accepts a bid, "the purchaser acquire[s] a right to a deed on complying with the terms of sale and assume[s] the obligation of complying with those terms"); *Lal v. Ameriquest Mortg. Co.*, 858 A.2d 119, 124 (Pa. Super. Ct. 2004) ("[O]nce the hammer falls [at a sheriff's sale] and bidding is closed, the winning bidder has entered into a binding contract and may no longer retract his or her bid.");

proposed amendment as to the Bank would be futile, the Court granted Plaintiffs leave to file a formal motion for leave to amend accompanied by a proposed amended complaint.

With respect to the breach of contract claim, Plaintiffs' proposed Second Amended Complaint alleges (1) the Bank entered into a contract with the City to purchase the Property for $93,000, memorialized by the deed to the Property, *see* Second Am. Compl. ¶¶ 58, 61; (2) Plaintiffs are intended beneficiaries of the contract as they are entitled to that portion of the purchase price remaining after all liabilities and debts have been paid and recorded, *see id.* ¶¶ 59-60; and (3) both the Bank and the City breached the contract—the Bank by failing to pay, and the City by failing to require payment of, the excess amount to which Plaintiffs are entitled, *see id.* ¶ 62.

The Bank has not opposed Plaintiffs' motion for leave to amend; therefore, Plaintiffs will be permitted to pursue the breach of contract claim in their proposed Second Amended Complaint against the Bank.

The City, however, argues Plaintiffs' breach of contract claim is not viable against it because insofar as Plaintiffs are third party beneficiaries of an alleged contract between the City and the Bank, Plaintiffs may enforce that contract only against the promisor—here the Bank,

---

*Calhoun*, 30 A.2d at 736 (characterizing the sheriff as making a "contract of sale" with the winning bidder at a sheriff's sale); *Fed. Farm. Mortg. Corp. v. Howard*, 47 Pa. D. & C. 64, 66 (Pa. Ct. Com. Pl. 1942) ("The purchaser at a sheriff's sale contracts with the sheriff to purchase and thereby becomes liable to the sheriff for his default in paying the amount of his bid at the time specified."). *But see Brown v. City of Phila.*, No. 359 C.D. 2016, 2016 WL 6246942, at *3 (Pa. Commw. Ct. Oct. 26, 2016) ("[A] contract does not exist between a purchaser at a sheriff sale [pursuant to the Municipal Claims and Tax Liens Act] and the Sheriff because the Sheriff is carrying out a ministerial function that he is already legally bound to perform pursuant to judicial order and Section 31.2 of the Tax Liens Law.").

which failed to pay the full amount of its bid.[15]  Plaintiffs do not dispute that they may pursue a third party beneficiary claim only against a breaching party to the contract in question; rather, they maintain the City is a breaching party because it failed to distribute the excess proceeds from the sale to Plaintiffs as required by Pennsylvania law.

Under Pennsylvania law, a nonparty to a contract is a third party beneficiary of the contract with standing to recover thereon if (1) "recognition of a right to performance [of a promise in the contract] in the beneficiary is appropriate to effectuate the intention of the parties," and (2) either (a) "the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary," or (b) "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."  *Guy v. Liederbach*, 459 A.2d 744, 751 (Pa. 1983) (quoting Restatement (Second) of Contracts § 302 (1979)).[16]  As the City notes, in Pennsylvania, "[t]he duty of performance in a third party beneficiary contract is owed by the promisor," and the beneficiary thus has a breach of contract claim only against the promisor.  *See Green v. Phila. Hous. Auth.*, 13 Phila. 75, 81, 1985 Phila. Cty. Rptr. LEXIS 83, at *10 (Pa. Ct. Com. Pl. 1985) (holding plaintiffs could not assert a claim against the Philadelphia Housing Authority (PHA) as third party beneficiaries of contracts between PHA and its liability insurers as the duty allegedly breached was owed by the insurers, not PHA); *cf. Katz v. Twp. of Westfall*, 287 F. App'x 985, 989 (3d Cir. 2008) ("In order to be a third-party beneficiary, one must be entitled to enforce the contract *against the promisor*." (emphasis added)).  Courts in

---

[15] The City also maintains Plaintiffs' breach of contract claim, which is subject to a four-year statute of limitations under 42 Pa. Cons. Stat. Ann. § 5525(a)(8), is time barred.  Because the Court finds the claim fails for other reasons, the Court need not address this issue.

[16] A nonparty is also a third party beneficiary if "both parties (promisor and promise) . . . express an intention that the third party be a beneficiary to whom the promisor's obligation runs in the contract itself."  *Guy*, 459 A.2d at 750.  Plaintiffs do not argue this standard is satisfied in this case.

other jurisdictions have likewise held a "third-party beneficiary's [breach of contract] action lies only against the promisor."  *District of Columbia v. Campbell*, 580 A.2d 1295, 1302 (D.C. 1990) (holding a subcontractor could not sue a municipality as a third party beneficiary for failing to enforce a general contractor's contractual obligation to obtain a payment bond because it was the general contractor, not the municipality, that promised to obtain the bond)[17]; *see Sullivan v. United States*, 625 F.3d 1378, 1380-81 (Fed. Cir. 2010) (holding alleged third party beneficiaries of a contract between the government and a contractor could not sue the government for failing to enforce a contract provision requiring the contractor to obtain additional automobile insurance because the contractor was the party who committed the breach); *Hesse v. Long & Foster Real Estate, Inc.*, No. 11-506, 2012 WL 1427793, at *3 (E.D. Va. Apr. 23, 2012) (declining to recognize the "novel theory," not recognized in any jurisdiction, "that a third party to a contract can sue the non-breaching party for failure to enforce the contract"); *see also* Restatement (Second) of Contracts § 304 ("A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty.").

By Plaintiffs' own account, under the terms of the contract in this case, it is the Bank that promised to pay the amount of its bid at the sheriff's sale.  *See* Pls.' Mem. in Supp. of Mot. for Leave to Amend 8 (citing Second Am. Compl. ¶¶ 58-63); *see also Broad St. Hosp.*, 47 A.2d at 283 (holding that upon the acceptance of a bid at a sheriff's sale, the purchaser assumes the obligation of complying with the terms of sale).  Hence, Plaintiffs may enforce this promise to pay only against the Bank.

---

[17] The court in *Campbell* recognized a single exception to this rule, "where the beneficiary had a previous enforceable claim against the promisee and the promisor essentially assumed the promisee's obligation."  580 A.2d at 1302-03 (citing Restatement (Second) of Contracts § 310(1) & cmt. a (1981)).  This exception is patently inapplicable here.

Plaintiffs argue that under the terms of the agreement between the City and the Bank, which fixed the sale price at $93,000, the City had an obligation to distribute the excess proceeds of the sale to Plaintiffs.  But, as Plaintiffs acknowledge, the source of this obligation is not the sale contract, which simply provides for the conveyance of the Property in exchange for payment of the $93,000 sale price, but Pennsylvania Rule of Civil Procedure 3136, which sets forth procedures for the distribution of the proceeds of a sheriff's sale to third parties.  *See* Pls.' Resp. to City's Mot. to Dismiss With Prejudice or to Deny Leave to Amend 4 (citing Rule 3136 as the source of the City's duty to distribute excess proceeds from a sheriff's sale to the former property owner).  And while Plaintiffs maintain the City's obligations under Rule 3136 are incorporated into the sale contract under the principle that "substantive laws in effect when the parties enter into a contract are implicitly incorporated into it," *First Nat'l Bank of Pa. v. Flanagan*, 528 A.2d 134, 137 (Pa. 1987), this principle is inapplicable here.  In general, "state laws are implied into private contracts only when those laws affect the validity, construction, and enforcement of contracts."  *Gen'l Motors Corp. v. Romein*, 503 U.S. 181, 189 (1992).  The provisions of Rule 3136 on which Plaintiffs rely are concerned solely with the sheriff's handling of the proceeds of a sheriff's sale and have no effect on the validity, construction, or enforceability of the contract of sale as between the parties to that contract—the City and the Bank.  *Cf. Meneice v. Camp Kadimah Co.*, 43 A.2d 621, 622 (Pa. Super. Ct. 1945) (holding a statute setting forth construction requirements for public swimming pools was not incorporated into a private contract for the construction of a pool as the statute "affect[ed] the right of the owner to operate the pool, but . . . d[id] not fix the rights and liabilities between the owner and the contractor").

The remaining cases cited by Plaintiffs in support of their third party beneficiary claim against the City are inapposite.  While these cases recognize a sheriff may be liable for mishandling sheriff's sale proceeds, they do not hold a party owed a share of the proceeds may

recover against the sheriff based on a third party beneficiary breach of contract theory.[18] Because Plaintiffs' contract remedies, if any, lie against the Bank, Plaintiffs motion for leave to assert a third party beneficiary breach of contract claim against the City will be denied.

### C.     Negligent Mishandling of Funds

Finally, Plaintiffs seek leave to assert a claim for negligent mishandling of funds against the City based on the City's failure to collect the full amount of the Bank's winning bid and distribute the excess proceeds to Plaintiff.  The City argues this claim is futile because, among other reasons, the City is immune from liability under the Pennsylvania Political Subdivision Tort Claims Act (PSTCA), 42 Pa. Cons. Stat. Ann. § 8541 et seq.  The Court agrees.[19]

The PSTCA grants "local agencies"[20] immunity from liability "for any damages on account of any injury to a person or property caused by any act of the local agency or an

---

[18] Only one of the cases cited by Plaintiffs appears to have involved a contract-based claim against a sheriff.  *See Knoell v. Carey*, 132 A.2d 702 (Pa. 1926).  In that case, the plaintiff, a judgment creditor of the mortgagor, sued the sheriff for improperly distributing sheriff's sale proceeds to other creditors ahead of him, resulting in the plaintiff recovering only a portion of the amount owed to him.  *Id.* at 702-03.  Although the opinion states the plaintiff's action was brought in assumpsit, it makes no mention of a third party beneficiary theory.  Elsewhere in the opinion, moreover, the court characterizes improper distribution as a tort.  *See id.* at 703.  As for the remaining three cases cited by Plaintiffs, in two of those cases, the plaintiffs pursued their improper distribution claims under various tort theories.  *See Kanofsky v. Carey*, 89 Pa. Super. 422, 424 (Pa. Super. Ct. 1926) (trespass action to recover damages for the sheriff's allegedly wrongful distribution of sale proceeds); *Pingitore v. City of Phila.*, Nos. 01141, 00387, 2011 WL 9156008 (Pa. Ct. Com. Pl. Nov. 14, 2011) (allowing tort claims for concealment and conversion of excess proceeds to proceed against the City of the City's preliminary objections).  The final case cited by Plaintiffs, *Mather v. McMichael*, 1 Harris 301 (Pa. 1850), also does not support Plaintiffs' third party beneficiary breach of contract theory as the case does not specify the source of the sheriff's liability for improper distribution.

[19] The City also opposes Plaintiffs' belated attempt to add a negligent mishandling claim on numerous other grounds, including that the claim is untimely and is barred by the gist of the action doctrine.  Because the Court concludes the City enjoys PSTCA immunity as to this claim, the Court need not address the City's additional arguments.

[20] A "[l]ocal agency" is "[a] government unit other than the Commonwealth government."  42 Pa. Cons. Stat. Ann. § 8501.  It is well established that the City of Philadelphia is a local agency

employee thereof or any other person," unless the claim falls within one of eight enumerated exceptions.   42 Pa. Cons. Stat. Ann. §§ 8541-8542.   Because the PSTCA was intended "to insulate government from exposure to tort liability for any of its acts," the exceptions to immunity are "strictly construed."   *Kiley v. City of Phila.*, 645 A.2d 184, 185-86 (Pa. 1994); *see also Borough of W. Fairview v. Hess*, 568 A.2d 709, 714 (Pa. Commw. Ct. 1989) ("Exceptions to governmental immunity are to be construed narrowly."), *abrogated on other grounds as recognized by Muth v. Ridgway Twp. Mun. Auth.*, 8 A.3d 1022 (Pa. Commw. Ct. 2010).   At issue in this case is the "personal property" exception, under which a local agency may be liable for negligent acts by the agency or its employees with respect to "[t]he care, custody or control of personal property of others in the possession or control of the local agency."   42 Pa. Cons. Stat. Ann. § 8542(b)(2).   The damages recoverable under this exception are limited to "property losses suffered with respect to the personal property in the possession or control of the local agency."   *Id.*   Thus, for Plaintiffs' negligent mishandling claim to come within the personal property exception to governmental immunity, the excess proceeds must have been in the City's "possession or control," within the meaning of the statute.

---

entitled to immunity under the PSTCA.   *See Walsh v. City of Phila.*, 585 A.2d 445, 450 (Pa. 1991).   The Sheriff's Office enjoys the same PSTCA immunity as the City, as it is not a legal entity separate from the City.   *See Balletta v. Spadoni*, 47 A.3d 183, 195 (Pa. Super. Ct. 2012) (affirming the dismissal of tort claims against a county sheriff's office and a county solicitor's office because the county was a local agency entitled to immunity under the PSTCA); *see also Jackson v. City of Erie Police Dep't*, 570 F. App'x 112, 114 n.2 (3d Cir. 2014) (recognizing "a city police department is a governmental sub-unit that is not distinct from the municipality of which it is a part"); *Monastra v. Del. Cty. Sheriff's Office*, 49 A.3d 556, 558 & n.2 (Pa. Commw. Ct. 2012) (holding a township police department and a county sheriff's office were not proper parties to a civil action as they were "not legal entities separate from their political subdivisions" and were, in any event, protected from suit under the PSTCA as government agencies).   Notably, Plaintiffs do not dispute that both the City and the Sheriff's Office are local agencies for purposes of the PSTCA.

Because Plaintiffs' negligence claim is premised on the City's failure to collect the excess proceeds generated by the sheriff's sale, it is readily apparent that the City never had possession of those funds, and Plaintiffs do not seriously argue otherwise. *See Giovannitti v. Pa. Dep't of Transp.*, 537 A.2d 966, 968 (Pa. Commw. Ct. 1984) (suggesting property is in the possession of a Commonwealth entity—for purposes of the similarly worded personal property exception to sovereign immunity in 42 Pa. Cons. Stat. Ann. § 8522(b)(3)—when the Commonwealth entity has "physical possession" of the item in question); *Walters v. Pa. Dep't of Transp.*, 474 A.2d 66, 67 (Pa. Commw. Ct. 1984) (same).

The Court also agrees with the City that it lacked control of the funds in question, which were owed to the City but never collected. In interpreting the personal property exception, Pennsylvania courts have held the term "control" means *actual* control, as opposed to potential or constructive control. *See Giovannitti*, 537 A.2d at 968 (interpreting "control" for purposes of the personal property exception in § 8522(b)(2) to require "actual control"); *Walters*, 474 A.2d at 67 (same); *Young v. Borough of E. Berlin*, 4 Pa. D. & C. 4th 140, 146 (Pa. Ct. Com. Pl. 1989) (holding "personal property must be in the actual, not potential, control or possession of the [local agency]" for the personal property exception to apply); *Paul's Plumbing & Heating Supply Co.*, 24 Pa. D. & C. 3d 541, 544 (Pa. Ct. Com. Pl. 1982) ("The term, 'possession or control of personal property,' connotes actual supervision or dominion over personal property."). The Commonwealth Court has suggested "[t]he term 'control' denotes that a person has some power over the actual property, i.e., to authorize transactions involving the property or to make disbursements." *Borough of W. Fairview v. Hess*, 568 A.2d 709, 715 (Pa. Commw. Ct. 1989).

Citing *Hess*, Plaintiffs argue the City had control over the excess proceeds because it has both the power and the legal obligation to disburse sheriff's sale proceeds. This may be true as to sheriff's sale proceeds actually collected by the City. As Plaintiffs note, the City in fact

distributed the funds it collected from the sale of the Property by paying off the liens and debts on the Property and by ensuring its own costs were paid. But there is no basis on which to conclude the City has the power to disburse unpaid proceeds, like the excess proceeds at issue in this case. While the City may have the power (and perhaps even the obligation) to collect the full amount of the purchase price from the winning bidder, the City's collection authority at most gives it potential control over the sale proceeds, in the event the funds are paid. The City cannot be regarded as having actual control over sheriff's sale proceeds it has not collected.[21]

This case is similar to *Paul's Plumbing*, in which the Court of Common Pleas considered the personal property exception in the context of a negligence claim by a judgment holder against a sheriff for failing to successfully levy against the judgment debtor's property. The plaintiff argued the claim came within the personal property exception because the sheriff's

---

[21] *Southersby Development Corp. v. Township of South Park*, No. 14-1248, 2015 WL 1757767 (W.D. Pa. Apr. 17, 2015), cited by Plaintiffs, does not hold to the contrary. *Southersby* involved a real estate developer's lawsuit against a township for improperly disbursing escrow funds the developer was required to post with the township to pay for inspection services rendered by the township engineer. *Id.* at *1. The township argued it was immune from suit under the PSTCA, but the court disagreed, finding the developer's negligence claim came within the personal property exception because the escrow funds were in the control of the township, which alone controlled the disbursement of the funds. *Id.* at *10. The escrow funds in *Southersby* were funds actually paid to the township and are therefore akin to the sheriff's sale proceeds actually collected by the City in this case. The court in *Southersby* thus had no occasion to consider whether funds owed but not collected were also within the township's control.

*Hess* and *Rousseau v. City of Philadelphia*, 514 A.2d 649 (Pa. Commw. Ct. 1986), the other cases cited by Plaintiffs, also do not support Plaintiffs' claim that the City had actual control of the uncollected excess proceeds in this case. In *Hess*, a suit by a local government (a borough) against its former auditors for negligently failing to discover a borough employee's embezzlement of borough funds, the Commonwealth Court held the suit did not come within the personal property exception to governmental immunity, finding the borough's funds were not in the control of the auditors, who lacked the power to authorize transactions involving the funds or to make disbursements of the funds. 568 A.2d at 715. In *Rousseau*, the Commonwealth Court held federal loan proceeds held by the City of Philadelphia in escrow were not in the City's possession or control where the funds could be disbursed only with the borrower's approval. 514 A.2d at 652-53. As in *Southersby*, the court in *Hess* and *Rousseau* did not consider whether funds owed to a local agency but not collected by the agency are within the agency's control.

"duty and power to levy on the property pursuant to the writ of execution gave rise to a constructive 'possession or control' of the personal property subject to the levy." 24 Pa. D. & C. 3d at 544. The court rejected this argument, finding actual, not constructive, possession or control of the property in question was required, and concluding the facts of the case "clearly show[ed] no actual possession or control." *Id.* "On the contrary," the court continued, "the failure of defendant to take actual possession or control is the gravamen of plaintiff's complaint. There was no negligence in the care of property actually possessed, but rather negligence in the failure to obtain possession." *Id.*

This court's analysis in *Paul's Plumbing* applies with equal force here. In their negligence claim, Plaintiffs fault the City not for mishandling sale proceeds in its actual control, but for failing to obtain control over the excess proceeds of the sale by collecting those funds. Because the claim does not concern personal property in the City's possession or control, the claim does not come within the personal property exception to governmental immunity, and the City is therefore immune from suit on this claim. As a result, Plaintiffs' motion to substitute will be denied.

For the reasons set forth above, Plaintiffs' Motion to Amend the Amended Class Action Complaint will be granted in part and denied in part. Plaintiffs will be permitted to file a second amended complaint to assert a third party beneficiary breach of contract claim against the Bank only. Insofar as Plaintiffs seek leave to pursue claims against the City, the motion will be denied. Plaintiffs' Motion to Substitute will also be denied. An appropriate Order follows.

BY THE COURT:


    /s/ Juan R. Sánchez
Juan R. Sánchez, J.