IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA BUTTERLINE, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 15-1429 |
| | : | |
| THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION, et al. | : : : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                               April 6, 2018

      Plaintiffs Lisa and Mark Butterline bring this putative class action against The Bank of New York Mellon Trust Company, N.A. (the Bank) to obtain the "excess proceeds" generated by the sale of their home in a sheriff's foreclosure sale at which the Bank, the mortgagee of the home and the executing creditor, was the winning bidder. Although the Bank's bid at the sheriff's sale exceeded the sum of its foreclosure judgment plus the costs owed on the property by more than $10,000—and although Plaintiffs are entitled to these excess proceeds under Pennsylvania law—they have not received the funds to date. The Philadelphia Sheriff's Office, which conducted the sheriff's sale, did not collect the excess from the Bank, but instead required the Bank to pay only the costs, as is its practice when the winning bidder at a sheriff's sale is also the executing creditor.

      In their Second Amended Complaint, filed after this Court dismissed their claims against the City of Philadelphia and the Philadelphia Sheriff's Office (collectively, "the City"), Plaintiffs seek to pursue a breach of contract claim against the Bank as third-party beneficiaries of the contract created between the Bank and the Sheriff as a result of the sheriff's sale. Plaintiffs seek to pursue this claim on behalf of themselves and a class of similarly situated persons whose real property was sold at a sheriff's sale and who did not recover excess proceeds generated by the sale. The Bank moves to dismiss Plaintiffs' Second Amended Complaint for failure to state a

claim upon which relief can be granted or, in the alternative, to strike Plaintiffs' class allegations. Because the Court concludes Plaintiffs have plausibly alleged that the sheriff's sale resulted in a sale contract between the Bank and the Sheriff under Pennsylvania law, and that Plaintiffs, as former owners of the foreclosed property, are intended third-party beneficiaries of that sale contract, the Bank's motion to dismiss will be denied, except as to Plaintiffs' request for punitive damages. The motion to strike will also be denied as premature.

**FACTS**

Plaintiffs previously owned real property located at 2713 East Huntingdon Street in Philadelphia (the Property). Plaintiffs fell behind on their mortgage payments, and in November 2007, the Bank initiated foreclosure proceedings in the Court of Common Pleas of Philadelphia County. The Bank eventually obtained a default judgment in the amount of $62,764.79 in April 2009.

The Bank thereafter sought to execute its foreclosure judgment, causing the Property to be sold at a sheriff's sale on November 1, 2011. In its pre-sale advertising, the City represented that "in the event of active bidding, the highest bidder would be required to post certain costs at the time of sale, with the balance of the purchase money to be deposited to the Sheriff at his office within 30 days of the sale." Second Am. Compl. ¶ 13. The sale generated competitive bidding, and the Bank purchased the Property with a winning bid of $93,000, approximately $30,000 more than the amount of its foreclosure judgment. Following the sale, the City did not prepare and keep on file a schedule of proposed distribution of the sale proceeds, as required by Pennsylvania Rule of Civil Procedure 3136(a).[1] Nor did the City enforce the payment terms set

---

[1] At the time of the sheriff's sale, Rule 3136(a) required the sheriff, "[n]ot later than thirty days after the sale of real property . . . , [to] prepare a schedule of proposed distribution of the proceeds of sale which shall be kept on file and shall be available for inspection in the sheriff's

2

forth in its pre-sale advertising. Instead, on July 23, 2012, the City deeded the Property to the Bank in exchange for the Bank's payment of only the costs owed on the Property—e.g., the Sheriff's costs in conducting the sale, taxes, charges for water and gas, etc.—which totaled $16,291.11,[2] rather than the entire $93,000 bid amount (or the full amount by which the bid amount exceeded the Bank's foreclosure judgment).[3] The deed was recorded on October 31, 2012. *See* Second Am. Compl. Ex. C.

In December 2014, Plaintiffs filed an administrative claim (known as a "DART" claim) with the Sheriff's Office, pursuant to the Sheriff's local rules, requesting all excess funds obtained as a result of the sale in this case—i.e., the amount by which the Bank's bid exceeded the sum of its foreclosure judgment and the costs on the Property. As noted, the $93,000 sale price exceeded the liens and costs on the Property by more than $10,000 in this case, generating excess proceeds which Plaintiffs, as the former owners of the Property, were entitled to receive under Pennsylvania law.[4] Nevertheless, on December 18, 2014, the City rejected Plaintiffs'

---

office." The Rule has since been amended to require the filing of the schedule of proposed distribution in the prothonotary's office.

[2] Plaintiffs believe the City may not even have required the Bank to pay the full amount of the costs. *See* Second Am. Compl. ¶ 16 (alleging, on information and belief, "the Bank only had to pay an additional $3,045 to the Sheriff's Office").

[3] Under Pennsylvania Rule of Civil Procedure 3133, when real property is purchased at a sheriff's sale by an executing creditor "entitled to receive all or part of the proceeds of the sale," the creditor is entitled to have the amount owed to it credited against the purchase price.

[4] *See In re Evergreen Mem'l Park Ass'n*, 308 F.2d 65, 67 (3d Cir. 1982) (holding a defaulting mortgagor of land in Pennsylvania "has the right to receive from the proceeds of the sale of the mortgaged land the amount, if any, in excess of the mortgage debt"); *Calhoun v. Commercial Credit Corp.*, 30 A.2d 735, 735 n.1 (Pa. Super. Ct. 1943) (recognizing a sheriff's "obligation to turn over to the debtor any money not needed to satisfy the judgment creditor and costs"); *W. Sav. Fund Soc'y of Phila. v. Devlin*, 61 Pa. D. & C.2d 702, 707 (Pa. Ct. Com. Pl. 1973) ("When the proceeds of a sale upon execution are more than sufficient to satisfy the liens upon a property sold and the costs of sale, it is the judgment debtor who is entitled to the surplus."); *cf. In re Sheriff's Excess Proceeds Litig.*, 98 A.3d 706, 713 n.2 (Pa. Commw. Ct. 2014) ("When a

administrative claim, stating that because the Bank, as executing creditor, "won the bid," it was required to pay only the "pending cost (i.e. Sheriff's cost, transfer taxes, water)" and Plaintiffs were thus "not due any monies from the Sheriff Sale." *Id.* Ex. E. Plaintiffs contend the City has a policy of collecting only the costs owed to the City where, as here, the winning bidder is also the executing creditor, leaving any excess proceeds from the sheriff's sale uncollected. In contrast, when the winning bidder is a third party, the City collects the full amount of the bid, though it does not distribute the excess proceeds to the former owner unless the former owner submits an administrative claim to the Sheriff's Office.

Based on the foregoing, Plaintiffs filed this putative class action lawsuit against the City and the Bank, initially asserting a procedural due process claim against the City and a contract claim against the Bank based on their mortgage contract with the Bank. The Court granted Defendants' motions to dismiss, but allowed Plaintiffs an opportunity to seek leave to amend. Plaintiffs thereafter filed a motion for leave to amend, which the Court denied as to the City on futility grounds. However, the Court granted Plaintiffs leave to amend as to the Bank, which did not oppose Plaintiffs' motion, resulting in the filing of the instant Second Amended Complaint in which Plaintiffs seek to recover the excess proceeds of the sheriff's sale from the Bank as a third-party beneficiary of the sale contract between the Bank and the Sheriff. The Bank now moves to dismiss Plaintiffs' third-party beneficiary breach of contract claim pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, to strike Plaintiffs' class allegations. Plaintiffs oppose the motion and, in the event their third-party beneficiary claim is dismissed, seek leave to

---

foreclosure sale generates proceeds in excess of existing tax liens and costs, Pennsylvania Rule of Civil Procedure . . . 3136 requires the Sheriff to distribute the excess proceeds to the former property owner . . . after approximately 40 days.").

file a third amended complaint to assert claims for unjust enrichment and conversion against the Bank.

**DISCUSSION**

To withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a Rule 12(b)(6) motion, a district court first must separate the legal and factual elements of the plaintiff's claims. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

The Bank argues Plaintiffs' Second Amended Complaint must be dismissed because (1) the Sheriff's sale did not create a contract between the Bank and the Sheriff, and (2) even if a contract was created, Plaintiffs do not qualify as third-party beneficiaries of that contract.

As this Court previously recognized in granting Plaintiffs leave to amend as to the Bank, the Pennsylvania courts have long characterized sheriff's sales as resulting in a contract between the sheriff and the winning bidder whereby "the purchaser acquire[s] a right to a deed on complying with the terms of sale and assume[s] the obligation of complying with those terms." *See Pa. Co. for Insurances on Lives & Granting Annuities ex rel. Jefferson Med. Coll. of Phila. v. Broad St. Hosp.*, 47 A.2d 281, 283 (Pa. 1946); *see also, e.g.*, *Adams v. Adams*, 4 Watts 160, 161 (Pa. 1835) (describing the highest bidder at a sheriff's sale as having "ma[de] [a] contract of

5

sale with" the sheriff); *Holdship v. Doran*, 2 Pen. & W. 9, 15 (Pa. 1830) (characterizing a sheriff's sale purchaser's failure to pay the amount of his bid as a "breach of contract"); *Lal v. Ameriquest Mortg. Co.*, 858 A.2d 119, 124 (Pa. Super Ct. 2004) (recognizing that when the hammer falls and bidding is closed at a sheriff's sale, "the winning bidder has entered into a binding contract and may no longer retract his or her bid"); *Pub. Fed. Sav. & Loan Ass'n v. Neumann*, 483 A.2d 505, 508 (Pa. Super. Ct. 1984) (explaining a bid at a sheriff's sale "represents an offer to purchase on the offered terms for a specified sum" and "[o]nce an offer to purchase is accepted, the bidder is bound to honor his offer which implicitly includes the conditions set forth in the notice of sale"); *Hartman v. Pemberton*, 24 Pa. Super. 222, 228-229 (Pa. Super. Ct. 1903) (recognizing a sheriff's sale results in a contract between the winning bidder and the sheriff); *Fed. Farm Mortg. Corp. v. Howard*, 47 Pa. D. & C. 64, 66 (Pa. Ct. Com. Pl. 1942) ("The purchaser at a sheriff's sale contracts with the sheriff to purchase and thereby becomes liable to the sheriff for his default in paying the amount of his bid at the time specified."). The sheriff, as auctioneer, "invite[s] offers" for the property, and a contract is formed when "the hammer falls" and the sheriff "accept[s] the [winning] bid." *Broad Street Hosp.*, 47 A.2d at 283 (citing, inter alia, an earlier version of the Williston contracts treatise)[5]; *see also Neumann*, 483 A.2d at 508.

Underscoring the contractual nature of the transaction, the Pennsylvania courts have also long recognized a sheriff's right to pursue contractual remedies against a defaulting purchaser. If the winning bidder fails to pay the purchase price, the sheriff may elect either to sue the bidder to

---

[5] The Pennsylvania Supreme Court's citation to the law of auctions underscores the contractual nature of the sale made at a sheriff's sale. *See* 1 *Williston on Contracts* § 4:12 (4th ed. May 2017 update) (describing auctions as resulting in "a binding contract . . . between the bidder and the auctioneer upon acceptance of the bid" on the "terms and conditions published in the advertisements of the auction or announced at the commencement of the sale").

6

recover the bid amount or to resell the property and sue the original high bidder to recover the amount of any decrease in the purchase price. *See Acker v. Snyder*, 95 A. 325, 326 (Pa. 1915). The sheriff is the proper party to bring such an action "because the contract for the sale of the estate is made with him by the purchaser, and with him alone." *Gaskell v. Morris*, 7 Watts & Serg. 32, 39-40 (Pa. 1844); *see also Holdship*, 2 Pen. & W. at 15 (holding a suit against a defaulting sheriff's sale purchaser "must either be brought by the sheriff, on the privity of contract, or by some person who was injured"); *Hartman*, 24 Pa. Super. at 229 (holding the right of action to recover the difference between the winning bid at a sheriff's sale and a smaller bid at a subsequent sale "is in the sheriff," as "[t]he contract was with him, and he is responsible for the proper application of any amount recovered"); *cf. Dickson v. McCartney*, 75 A. 735, 736 (Pa. 1910) (holding an ex-sheriff who sold property at a sheriff's sale may bring an action against a defaulting high bidder to recover the difference between the bid and the amount realized at a subsequent sale, as, having conducted the sale, the ex-sheriff "is considered . . . the real party making the contract of sale" (citation omitted)).

In arguing no contract was formed as a result of the sheriff's sale in this case, the Bank relies primarily on *Brown v. City of Philadelphia*, No. 359 C.D. 2016, 2016 WL 6246942 (Pa. Commw. Ct. Oct. 26, 2016), an unreported opinion in which the Pennsylvania Commonwealth Court rejected a breach of contract claim asserted against a sheriff by the winning bidder at a sheriff's sale conducted pursuant to the Municipal Claims and Tax Liens Act. After paying the full amount of his winning bid, the purchaser in *Brown* requested the deed to the property. *See id.* at *1. Although the sheriff was statutorily required to execute, acknowledge, and deliver the deed no more than 120 days after the purchaser paid the balance due on the sale, the sheriff failed to do so, and the purchaser thereafter sued the sheriff for breach of contract, seeking rescission of the contract and restitution. *See id.* at *2. Treating the suit as a petition to set aside

7

the sheriff's sale, the trial court denied it, but awarded the purchaser delay damages in the form of the additional interest he was required to pay as a result of the sheriff's failure to record the deed within the statutory period. *See id.* at *2-3. On appeal, the Commonwealth Court rejected the purchaser's argument that the trial court had erred in treating the action as a petition to set aside the sheriff's sale rather than a breach of contract action, holding "a contract does not exist between a purchaser at a sheriff sale and the Sheriff because the Sheriff is carrying out a ministerial function that he is already legally bound to perform pursuant to judicial order and Section 31.2 of the Tax Liens Law." *Id.* at *3.

*Brown*, however, is not dispositive. In rejecting the purchaser's breach of contract claim, the court in *Brown* did not address any of the contrary case law cited above, but instead relied on cases holding a contract does not result when a person pays a fee for a service a government actor is statutorily required to provide, as there can be no bargained-for exchange "where one of the parties is already legally bound to render the performance promised." *Petticord v. Joyce*, 578 A.2d 632, 633-34 (Pa. Commw. Ct. 1990) (holding the payment of a $20 fee for a lien search by the Prothonotary did not create a contract between the payor and the Prothonotary); *see also Pa. Dep't of Transp. v. First Pa. Bank, N.A.*, 466 A.2d 753, 754 (Pa. Commw. Ct. 1983) (holding the payment of a fee to the Department of Transportation to record a lien on a vehicle title pursuant to the Vehicle Code did not create a contract between the payor and the Department where the Vehicle Code required the Department to record a lien "upon the occurrence of certain predetermined events," including the submission of an application and fee). A sheriff's sale does not involve a similar fee-for-service transaction, but instead involves an auction at which property is offered for sale to the highest bidder.

Whether the sheriff's sale resulted in a contract between the Sheriff and the Bank is an issue of state law on which this Court is bound to follow the decisions of "the highest state

8

court." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 253 (3d Cir. 2010) (citation omitted). Whatever the merits of the court's analysis in *Brown*,[6] this Court is not free to disregard the contrary Pennsylvania Supreme Court authority discussed above. Thus, given the weight of authority suggesting that, under Pennsylvania law, a sheriff's sale results in a contract between the sheriff and the winning bidder, the Court finds Plaintiffs have sufficiently alleged the existence of a contract between the Sheriff and the Bank as a result of the sheriff's sale in this case.

As to whether the Second Amended Complaint sufficiently alleges that Plaintiffs are intended third-party beneficiaries of that contract, under Pennsylvania law, third-party beneficiary status can be established in two ways. Traditionally, the rule in Pennsylvania was that a person could recover on a contract as a third-party beneficiary "only where both parties to the contract express[ed] an intention to benefit the third party in the contract itself." *Scarpitti v. Weborg*, 609 A.2d 147, 149-50 (Pa. 1992). In 1983, however, the Pennsylvania Supreme Court recognized an exception to the traditional rule, adopting § 302 of the Restatement (Second) of Contracts, which provides:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intentions of the parties and either
>
> > (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> >
> > (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

---

[6] As an unreported opinion, the decision in *Brown* "may be cited for its persuasive value, but not as binding precedent." Pa. R. App. P. 3716(b).

9

*See id.* (quoting Restatement (Second) of Contracts § 302 (1979)). Under the Restatement, there is a two-part test for determining whether a person is an intended third-party beneficiary of a contract: "(1) the recognition of the beneficiary's right must be 'appropriate to effectuate the intention of the parties,' and (2) the performance must 'satisfy an obligation of the promisee to pay money to the beneficiary' or 'the circumstances [must] indicate that the promisee intends to give the beneficiary the benefit of the promised performance.'" *Guy v. Liederbach*, 459 A.2d 744, 751 (Pa. 1983). The first part of the Restatement test "sets forth a standing requirement which leaves discretion with the court to determine whether recognition of third party beneficiary status would be appropriate." *Scarpitti*, 609 A.2d at 150. The second part of the test "defines the two types of claimants who may be intended as third party beneficiaries." *Id.*

Plaintiffs do not argue they qualify as third-party beneficiaries under the traditional rule, and the Second Amended Complaint gives no indication that the sale contract between the Bank and the City—whether that contract is understood to be limited to the Sheriff's deed itself or to incorporate any other advertised terms of sale—affirmatively expressed an intention to benefit Plaintiffs. The question is thus whether the Second Amended Complaint alleges a basis for third-party beneficiary status under the Restatement test.

The Bank argues this test is not satisfied because the Second Amended Complaint fails to allege "facts that show that . . . [the Bank] and the Sheriff's Office intended to benefit Plaintiffs when the Sheriff's Deed was executed." Def.'s Br. in Supp. of Mot. to Dismiss 12. In particular, the Bank notes that the deed recites only the Sheriff's promise to convey the Property to the Bank in exchange for the Bank's payment of $93,000, but makes no mention of "how this sum will be applied, the amounts comprising . . . this sum, and what additional parties, if any, may be entitled to any excess funds." *Id.*

In determining whether Plaintiffs are intended third-party beneficiaries of the sale contract under the Restatement test, however, the Court's inquiry is not limited to the express terms of the contract itself. *See Limbach Co. v. City of Phila.*, 905 A.2d 567, 574 (Pa. Commw. Ct. 2006) (holding that where a plaintiff's "claim of third party beneficiary status is not premised upon the actual terms of the agreement or any *express* intention of the [parties to the agreement] to make [the plaintiff] a third party beneficiary[,] [t]he actual terms of the [agreement] are . . . not dispositive"). In *Guy v. Liederbach*, for example, the Pennsylvania Supreme Court held a named beneficiary of a will was an intended third-party beneficiary of the contract between the testator and his attorney for the drafting of the will because the will, though separate from the legal services contract, "clearly manifest[ed] the intent of the testator to benefit" the beneficiaries named therein. 459 A.2d 744, 751-52 (Pa. 1983). The suit in *Guy* arose because the attorney who drafted the testator's will directed the beneficiary to witness it, which invalidated her legacy when the will was probated. The beneficiary thereafter sought to pursue claims against the attorney as a third-party beneficiary of the testator's contract with the attorney for the drafting of the will. Applying the Restatement test, the court first found recognition of a "'right to performance in the beneficiary' would be 'appropriate to effectuate the intention of the parties,'" in light of the testator's clear intent to benefit the beneficiary in the will and the fact that the estate either could not or would not bring suit against the attorney. *Id.* at 751. The court also found the second part of the Restatement test was satisfied as the circumstances clearly indicated that in entering into a contract with the attorney wherein the attorney promised "to draft a will which carrie[d] out the testator's intention to benefit the legatees," the testator intended the named beneficiaries of the will to have the benefit of the attorney's promised performance. *Id.* at 752.

11

Applying the Restatement test in *Scarpitti v. Weborg*, moreover, the Supreme Court looked to the purpose of the contract in holding that owners of lots in a residential subdivision were third-party beneficiaries of an implied contract between the subdivision's developer and an architect wherein the architect "promise[d] to review all building plans and enforce the recorded subdivision restrictions." 609 A.2d at 151. Although the agreement did not "expressly manifest an intent to benefit the subdivision homeowners," the court nevertheless found recognition of a right to performance in the homeowners was appropriate to effectuate the intention of the parties where the obvious purpose of the agreement was to benefit the homeowners, who had the greatest interest in uniform enforcement of the subdivision restrictions and would be "benefitted by the establishment of a vehicle to enforce the restrictions." *Id.* Based on this conclusion, the court also found the developer, as promisee, intended that the homeowners have the benefit of the architect's promised performance—i.e., his enforcement of the deed restrictions. *See id.* That the homeowners were not individually named at the time the contract was entered into did not preclude them from being intended third-party beneficiaries of the contract because they were "part of a limited class of persons intended to benefit from the agreement." *Id.*

The contract at issue in this case is the product of a sheriff's sale conducted by auction at which the Bank agreed to purchase the Property for $93,000. "The purpose of a sheriff's sale in mortgage foreclosure proceedings is to realize out of the land, the debt, interest, and costs which are due, or have accrued to, the judgment creditor," *Bank of Am., N.A. v. Estate of Hood*, 47 A.3d 1208, 1211 (Pa. Super. Ct. 2012) (citation omitted), and following the sale, the sheriff is required to distribute the sale proceeds to the judgment creditor and other third parties with an interest in the proceeds, *see* Pa. R. Civ. P. 3136(d) (requiring the sheriff to distribute sale proceeds in accordance with a schedule of proposed distribution). Where the sale price exceeds the liens on the property and the costs of sale, such third parties include the former homeowner, who has the

12

right to receive the excess proceeds under Pennsylvania law. *See* n.4, *supra*. In conducting a sheriff's sale, the sheriff thus acts for the benefit of those with an interest in the sale proceeds, including the former homeowner. *See Gaskell*, 7 Watts & Serg. at 40 ("The sheriff may very properly be considered as invested with a trust by law to sell the estate, which he has full power and is bound to perform, for the benefit not only of the creditors of the owner, but likewise for the owner himself."); *Adams*, 4 Watts at 161 (recognizing the sheriff in making a contract of sale "acts in the character of a trustee")[7]; *cf. Dickson*, 75 A. at 736 (holding in a suit against a defaulting sheriff's sale purchaser to recover the difference between the defaulting purchaser's bid and the amount obtained on resale, "[t]he sheriff is merely the legal plaintiff, and the suit is solely for the benefit of the lien creditors entitled to the fund").

Here, according to the Second Amended Complaint, the $93,000 purchase price exceeded the amount of the Bank's foreclosure judgment and the costs on the Property, generating more than $10,000 in excess proceeds. Second Am. Compl. ¶ 24. The City acknowledges that when a sheriff's sale generates excess proceeds, the former homeowner is entitled to recover the excess.

---

[7] Although the Supreme Court recognized in *Adams* that a sheriff "acts in the character of a trustee" in making a contract of sale at a sheriff's sale, the court held that the sheriff, and not the former property owner, was the proper party to bring suit against a defaulting sheriff's sale purchaser to recover the difference between the defaulting purchaser's bid and the amount for which the property was eventually sold because the contract of sale was made with the sheriff, who "alone ha[d] the right to receive the money arising therefrom, and [wa]s responsible for the legal appropriation of it." 4 Watts at 161. In holding that the estate of the judgment debtor whose property was sold at the foreclosure sale could not sue the estate of the defaulting sheriff's sale purchaser directly, the court stressed the lack of any express agreement between debtor and purchaser. The court did not consider whether the debtor was a third-party beneficiary of the contract between the sheriff and the purchaser, and the decision in *Adams* predates the Pennsylvania Supreme Court's adoption of the Restatement test by more than a century. And while the court in *Adams* justified its holding in part on the basis that "[i]t would inevitably produce great confusion and clashing of suits to permit other persons, beside the sheriff, in their own names to maintain suits against the sheriff's vendees for breaches of their contracts made with him," *id.*, this consideration has no application where, as here, the sheriff has declined to enforce the purchaser's promise to pay.

13

*See id.* ¶¶ 53-54. Yet, inexplicably, the Sheriff does not collect the excess proceeds when the purchaser is the executing creditor. *See id.* ¶¶ 17-18.

These allegations are sufficient to establish a plausible claim that Plaintiffs are third-party beneficiaries of the sale contract in this case. As the former owners of the Property, Plaintiffs have an interest in the excess proceeds generated by the sale, which they are entitled to receive under Pennsylvania law. Given the nature and purpose of sheriff's sales, which are intended to benefit those with an interest in the sale proceeds, recognition of a right to performance in Plaintiffs of the Bank's promise to pay is appropriate to effectuate the intention of the parties to the sale contract because Plaintiffs have a right to receive a portion of the sale price the Bank agreed to pay and the Sheriff has declined to collect that portion of the sale proceeds. *See Guy*, 459 A.2d at 751 (relying on the fact that the testator's estate either could not or would not bring suit against the attorney who drafted the testator's will in holding a named beneficiary of the will was an intended third-party beneficiary of the testator's contract with the attorney for the drafting of the will); *cf. In re Gebco Inv. Corp.*, 641 F.2d 143, 145-47 (3d Cir. 1981) (holding a subcontractor was a third-party beneficiary of a construction loan agreement between a construction company and a bank where the loan funds were to be used only for the payment of labor and material costs on the construction project). It is also reasonable to infer from the nature and purpose of the sale that the sheriff intends to give the benefit of the purchaser's promise to pay to those entitled to receive the sale proceeds. Thus, where, as here, the sale generates excess proceeds, it is reasonable to infer that the sheriff intends to give the benefit of the purchaser's promise to pay the excess proceeds to the former homeowner, who alone is entitled to receive them. *Cf. Calhoun*, 30 A.2d at 735 & n.1 (recognizing that after the judgment creditor and costs of sale have been paid in full, money recovered from a defaulting sheriff's sale purchaser must be turned over to the debtor).

14

The Bank cites the City's failure to collect the excess proceeds of the sale in this case as evidence that Plaintiffs have no claim against the Bank, arguing that neither Rule 3136, which requires the sheriff to distribute the proceeds of a sheriff's sale, nor any other provision of law prevents the City "from accepting certain costs alone for the Property from [the Bank], even when a bid for more than costs has been offered." Def.'s Br. in Supp. of Mot. to Dismiss 13-14. While a sheriff is excused from the obligation to file a schedule of proposed distribution when the property is sold to the executing creditor for "costs only," Pa. R. Civ. P. 3136(a), the sale price in this case exceeded the costs owed on the property. The Bank cites no authority for the proposition that, having accepted the Bank's offer of $93,000 for the Property after competitive bidding, the City could simply give the Property to the Bank for less. And the deed's recital that the conveyance of the Property was "for and in consideration of the sum of ($93,000.00) to me in hand paid," Second Am. Compl. Ex. C, suggests that the City did not intend to sell the Property for less than the agreed upon $93,000 purchase price. The Bank's reliance on the letters Plaintiffs received from the Sheriff's Office, advising them they were "not due any monies from the Sheriff Sale," *id.* Exs. E & F, is also misplaced, at least at the pleading stage. Despite its failure to collect the excess proceeds in this case, the City allegedly acknowledges that former homeowners are entitled to any excess proceeds generated in a sheriff's sale. *See id.* ¶¶ 53-54. Indeed, in arguing for dismissal of the procedural due process claim in Plaintiffs' original Complaint, the City maintained that "[t]o the extent the Bank failed to pay plaintiffs the difference between its $93,000 bid and the judgment plus the costs of the sale," Plaintiffs have "a claim against a Bank for the difference." *See* City's Mem. in Supp. of Mot. to Dismiss 13, ECF No. 18-1.

Because the facts alleged in the Second Amended Complaint support the reasonable inference that (1) the sheriff's sale resulted in a sale contract between the Sheriff and the Bank,

15

wherein the Bank agreed to purchase the Property for $93,000, and (2) Plaintiffs are intended third-party beneficiaries of the sale contract insofar as the sale generated excess proceeds, the Court finds Plaintiffs have stated a third-party beneficiary breach of contract claim against the Bank. The Bank's motion to dismiss the Second Amended Complaint will therefore be denied.[8]

In addition to seeking dismissal of this action, the Bank also asks this Court to strike Plaintiffs' class claims. Although a district court has authority to strike class action allegations at the pleading stage pursuant to Federal Rules of Civil Procedure 12 and 23, a motion to strike should be granted only "if class treatment is evidently inappropriate from the face of the complaint." *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 615 (E.D. Pa. 2015) (citing *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011)). Unless it is apparent that "no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23," a motion to strike should be denied, and plaintiffs should be permitted to conduct discovery relevant to the Rule 23 class certification requirements. *Id.* at 615-16 (citation omitted).

Plaintiffs seek to pursue this action on behalf of a class composed of "[a]ll individuals or entities whose real property was foreclosed and sold to the Bank at the sheriff sale and who did not recover the excess funds remaining from such sheriff's sale after all liabilities on the real property had been satisfied." Second Am. Compl. ¶ 34. The Bank argues it is clear from the face of the Second Amended Complaint that this proposed class cannot be certified because (1)

---

[8] Because the Court finds Plaintiffs have stated a third-party beneficiary breach of contract claim, the Court need not address Plaintiffs' request, in their opposition to the motion to dismiss, for leave to amend to plead claims for unjust enrichment and conversion. *See* Pl.'s Opp'n 8 (requesting leave to amend only "[i]n the event this Court finds that Plaintiffs have not stated a claim as a third party beneficiary").

the class is unascertainable, and (2) individual issues for each putative plaintiff will predominate over issues common to the class.

A class is ascertainable if (1) it is "defined with reference to objective criteria"; and (2) "there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd v. Aaron's, Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (citation omitted). Ascertainability "focuses on whether individuals fitting the class definition may be identified without resort to mini-trials." *Id.* at 164 (citation omitted). "[I]f individualized fact-finding or mini-trials will be required to prove class membership," the mechanism for identifying class members is not administratively feasible, and the ascertainability requirement is not satisfied. *Carrera v. Bayer Corp.*, 727 F.3d 300, 307-08 (3d Cir. 2013). Even at the class certification stage, however, a plaintiff need not be able to identify all class members, but must show "only . . . that 'class members *can* be identified.'" *Byrd*, 784 F.3d at 163 (quoting *Carrera*, 727 F.3d at 308 n.2).

Although the Bank argues that determining class membership will involve a host of individualized inquiries regarding each potential class member, Plaintiffs maintain class members can be readily identified from records of sheriff's sales in which the Bank was the winning bidder. According to Plaintiffs, the sheriff's sale records will show the liens (and, presumably, the costs) on the foreclosed property and the price at which the Bank was the winning bidder, thus enabling the parties to identify those former property owners whose property was sold in a sheriff's sale that generated excess proceeds. *See* Pls.' Opp'n 11. The Bank does not dispute Plaintiffs' assertion that those sheriff's sales in which the Bank purchased the property with a winning bid high enough to generate excess proceeds can be readily identified based on sheriff's sale records, nor does it explain why this proposed mechanism for determining class membership is not administratively feasible. *Cf. In re Cmty. Bank of N. Va.*

*Mortg. Lending*, 795 F.3d 380, 397 (3d Cir. 2015) (holding plaintiffs' proposed process for identifying putative class members was "reliable" and "repeatable," where the process entailed "consult[ing] [the defendant bank's] business records and then follow[ing] a few steps to determine whether the borrower is the real party in interest"); *Byrd*, 784 F.3d at 171 (recognizing "the size of a potential class and the need to review individual files to identify its members are not reasons to deny class certification" (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539-40 (6th Cir. 2012))). And while the Bank does suggest that identifying class members will require the Court to determine "whether the Sheriff's Office published a Schedule of Distribution, whether each potential class member filed a timely claim demanding entitlement to any excess funds, and whether the Sheriff's Office distributed some or all of the funds," Def.'s Br. in Supp. of Mot. to Dismiss 16, it is not clear that such inquiry will be necessary given Plaintiffs' allegations that the City has a policy to collect only costs—and *not* to collect any excess proceeds the homeowner is entitled to receive—when the Bank wins the bid at a sheriff's sale, *see* Second Am. Compl. ¶¶ 17-18.[9]

As to predominance, the Bank mentions this issue only briefly, arguing that for the same reasons the class is unascertainable, individual issues will predominate over common issues. Unhelpfully, Plaintiffs fail to respond. Given the scant attention devoted to this issue in the parties' briefs, the Court is not persuaded class discovery would be futile in this case. Accordingly, without expressing any opinion on whether Plaintiffs' proposed class can

---

[9] The Bank also argues identifying class members will require the Court to "assess whether each class member properly exhausted their administrative remedies under Pa. R. Civ. P. 3136," Def.'s Br. in Supp. of Mot. to Dismiss 16-17, but this argument is premature as it is not clear that exhaustion is required in this case.

ultimately be certified, the Court does not find a basis to strike the class allegations at this stage.[10]

Finally, the Bank asks this Court to strike Plaintiffs' request for punitive damages. Plaintiffs do not respond to the Bank's argument on this point, and, as the Bank notes, "under Pennsylvania law, 'punitive damages are not recoverable in an action solely based upon breach of contract.'" *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 147 (3d Cir. 2000) (quoting *Johnson v. Hyundai Motor Am.*, 698 A.2d 631, 639 (Pa. Super. Ct. 1997)). Plaintiffs' request for punitive damages will therefore be stricken.

For all of the foregoing reasons, the Bank's motion to dismiss Plaintiffs' Second Amended Complaint will be denied, except that Plaintiffs' request for punitive damages will be stricken. The Bank's alternative request to strike Plaintiffs' class allegations will also be denied at this stage. An appropriate order follows.

BY THE COURT:


   /s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

[10] In its reply brief, the Bank asserts for the first time that Plaintiffs' class claims should be stricken because they are improperly directed toward "The Bank of New York Mellon Trust Company, National Association," rather than the specific trust that owned their mortgage loan. Def.'s Reply 7. The Bank does not contend, however, that this deficiency is one that cannot be resolved through class discovery.